**DANA CORPORATION,**
Plaintiff–Appellant/Cross–Appellee,

v.

**BLUE CROSS & BLUE SHIELD MUTU-AL OF NORTHERN OHIO; Blue Cross of Northwest Ohio; Blue Cross & Blue Shield of Ohio; Blue Cross of Michigan; Blue Cross of Indiana,** Defendants–Appellees/Cross–Appellants.

Nos. 89–3442, 89–3474.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 8, 1990.

Decided March 28, 1990.

Rehearing Denied April 26, 1990.

Joseph P. Lavelle, John Briggs, Jerrold J. Ganzfried (argued), Elizabeth E. Kline, Howrey & Simon, Washington, D.C., Cary Rodman Cooper, Jacqueline M. Boney, Cooper, Straub, Walinski & Cramer, Toledo, Ohio, for plaintiff-appellant, cross-appellee.

Kenneth F. Seminatore, Allen J. Marabito (argued), Douglas A. Andrews, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, Ohio, David M. Schnorf, Troy L. Moore, Schnorf & Schnorf, Charles P. Baither, III (argued), John M. Curphey, Robison, Curphey & O'Connell, Thomas Manahan, Manahan, Pietrykowski, Bamman & Delaney, Toledo, Ohio, for defendants-appellees, cross-appellants.

Before JONES and MILBURN, Circuit Judges, and BELL, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellant/cross-appellee, Dana Corporation, appeals and defendants-appel-

* The Honorable Robert Holmes Bell, United States District Judge of the Western District of Michigan, sitting by designation.

lees/cross-appellants, Blue Cross & Blue Shield of Ohio (BCBSO—the successor by merger to Blue Cross & Blue Shield Mutual of Northern Ohio and to Blue Cross of Northwest Ohio), Blue Cross & Blue Shield of Michigan (BCM), and Blue Cross & Blue Shield of Indiana (BCI) (collectively referred to as "Blue Cross"),[1] cross-appeal the bench judgment granting Blue Cross's motion to dismiss in this civil RICO action. For the following reasons, we affirm in part and reverse in part.

## I.

Dana provides health care benefits, including hospitalization, to its employees and their dependents. In 1971, in an effort to reduce the cost of providing such benefits, Dana entered into an Administrative Services Only (ASO) Agreement with BCBSO, whereby BCBSO would administer Dana's benefits plan on a cost-plus basis. In addition, BCBSO provided services to Dana's beneficiaries located outside of Ohio through Participating Plans. BCM has entered into such a Plan. Blue Cross administered benefits for Dana from September 1971 through February 1988.

Under Blue Cross's contracts with hospitals, Blue Cross pays the claim for each of its customers at 97% of the hospital charges and then bills the customer that same amount. In addition to giving Blue Cross a discount on its payments, the hospital contract gives Blue Cross the right to conduct yearly cost containment audits. If the hospital exceeds the cost limitations set forth in the contract, it pays Blue Cross a settlement or refund. The ASO agreements with customers such as Dana do not explicitly incorporate the hospital contracts. Under Dana's contract, Blue Cross is to bill Dana at the "actual cost of incurred claims" plus a service and retention fee. The contract does require Blue Cross to send certain bills and financial papers to Dana. However, the contract is silent with respect to the year-end hospital settlements. Blue Cross never adjusted their

charges to Dana to reflect these hospital settlements. Dana claims that it was unaware of the settlements until 1986, and that during the seventeen-year period when the contracts were in effect, Blue Cross received more than $4.5 million in the form of rebates from the hospitals. Dana alleges that Blue Cross represented at meetings that Dana was receiving the benefit of Blue Cross's cost reductions resulting from any hospital rebates. Some correspondence referred to "net payments," "discounts," and "contractual savings."

Dana filed a complaint in the United States District Court for the Northern District of Ohio, Judge John W. Potter presiding. This complaint, as amended, charged Blue Cross with violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 (1988), and a violation of a number of state laws. The RICO claim was predicated upon violations of the mail fraud statute, 18 U.S.C. § 1341. Dana alleged that Blue Cross made false and misleading statements intentionally and knowingly "as a scheme to obtain money from Dana by means of false or fraudulent pretenses, representations, or promises." J.App. at 26. Blue Cross responded by moving for dismissal of the complaint.

The district court denied most of Blue Cross's reasons for dismissal—most notably for this appeal, the motion for disqualification of counsel and the motion for dismissal due to lack of subject matter jurisdiction. However, in a later order the court dismissed the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) on two grounds: (1) insufficient pleadings to show a scheme to defraud under the mail fraud statute; and (2) no *pattern* of racketeering activity under RICO. After the dismissal, Dana asked for leave to amend the complaint and moved to amend or alter the judgment pursuant to Fed.R.Civ.P. 59(e). The Proposed Second Amended Complaint is different from the first complaint in several respects: (1) it alleged specific instances of intentional false repre-

**1.** BCI was a party to the original complaint but because Dana dismissed its claims against BCI, it is not a party to this appeal.

sentations made by Blue Cross to Dana; (2) it alleged that Blue Cross similarly defrauded a number of other cost-plus clients; (3) it alleged that Blue Cross's conduct violated 18 U.S.C. § 664 (conversion of funds related to an employee welfare benefit plan), an additional predicate for RICO; and (4) it alleged a RICO conspiracy between BCBSO and BCM, another predicate for RICO. The district court denied the motion based upon the futility of amendment: "[the] proposed second amended complaint fails to state a cause of action under RICO." J.App. at 356a.

## II.

Whether the district court correctly dismissed the claims pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law subject to *de novo* review. *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir.1987). This court must construe the complaint in the light most favorable to Dana, accept all of Dana's factual allegations as true, and determine whether Dana undoubtedly can prove no set of facts in support of its claims that would entitle it to relief. *Id.*

## A.

■ In order to show a violation of RICO, Dana must sufficiently plead a predicate act. In its first amended complaint, Dana alleged that Blue Cross committed mail fraud. Two elements are necessary to prove mail fraud: "a scheme or artifice to defraud and a mailing for the purpose of executing the scheme." *Bender v. Southland Corp.*, 749 F.2d 1205, 1215–16 (6th Cir.1984).

A scheme to defraud must involve "*[i]ntentional fraud,* consisting in deception *intentionally* practiced to induce another to part with property or to surrender some legal right, and which accomplishes the designed end." *Id.* at 1216 (quoting *Epstein v. United States,* 174 F.2d 754, 765 (6th Cir.1949)) (emphasis in original). Though noting that the allegations were pled with sufficient particularity to put Blue Cross on notice as to the fraud claim (Fed.R.Civ.P. 9(b)), the district court decided that the pleadings were not sufficient

(pursuant to Fed.R.Civ.P. 12(b)(6)) to show mail fraud because they were based upon a breach of contract claim:

> If plaintiff should fail to establish a contractual right to the refunds and rebates, defendants could have no liability under RICO. The complaint states a claim for breach of contract which cannot be converted to a RICO action merely by alleging fraud. The complaint fails to plead facts from which a scheme or artifice to defraud could ultimately be determined to exist.

J.App. at 352. The district court relied heavily on *Blount Financial Services, Inc. v. Walter E. Heller & Co.,* 819 F.2d 151, 152 (6th Cir.1987), where the contract provided that Heller would charge an interest rate on a loan equal to the prime rate charged by a large commercial bank, Continental Illinois. The plaintiff alleged that Heller charged an interest rate higher than the actual prime rate at Continental. The *Blount* court held that:

> The fact that the parties take different positions under the contract as to the appropriate prime rate, or the fact that the defendant charged too high a 'prime rate' and thereby concealed or refused to disclose what the plaintiff considers the true prime rate called for under the contract, does not give rise to a valid claim for fraud.

*Id.*

We hold that Dana made sufficient allegations of intentional fraud by Blue Cross to withstand a Fed.R.Civ.P. 12(b)(6) motion to dismiss, for the focus is upon the pleadings, not any proof or evidence. *Blount* does not stand for a blanket prohibition of RICO claims related to contract disputes. Rather, the reason for dismissal in *Blount* was that the plaintiff failed to make sufficient allegations of "misrepresentations or omissions which were 'reasonably calculated to deceive persons of ordinary prudence and comprehension.'" 819 F.2d at 153 (citation omitted). In contrast, Dana has made such allegations of misrepresentations and omissions by Blue Cross. Moreover, in *Blount* the fact that was allegedly misrepresented was a single figure readily

ascertainable from a third party; in the instant case, Dana had no way to find out about rebates known only to Blue Cross. We also note that Dana's allegations are partially based upon "information and belief." However, in the proposed second amended complaint, Dana made specific allegations of fraud, including the letters alleged to contain misrepresentations. Issues as to Dana's proof of its allegations can be decided at a later stage; Dana's present allegations of intent are sufficient to state a claim. *See In re Long Distance Telecommunications Litigation*, 831 F.2d 627, 634 (6th Cir.1987) (charge of violation of RICO due to practice of telephone company to charge for non-completed calls but not inform consumers was sufficient to survive Fed.R.Civ.P. 12(b)(6)).[2]

Blue Cross argues that even if there is a scheme to defraud, Dana did not sufficiently allege the second requirement of mail fraud—that the mailings were for the purpose of the scheme. Blue Cross contends that the mailings, namely bills and invoices, were required by contract and would have been sent whether or not an alleged scheme existed. In *Schmuck v. United States*, — U.S. —, 109 S.Ct. 1443, 1447, 103 L.Ed.2d 734 (1989), the Supreme Court held that to prove mail fraud, the mailings need not be an essential element of the scheme; it is sufficient that they be incident to an essential part of the scheme. The Court noted that innocent mailings— ones that contain no false information themselves—can still be sufficient to be part of a mail fraud. *Id.* 109 S.Ct. at 1449. Applying *Schmuck* to the instant case, we hold that the "routine" mailings meet the standard for mail fraud. The information about costs which is contained in these mailings is alleged to be untrue and a false representation. The fact that letters were required by the contract is not relevant; it is the content of those letters that makes them susceptible to the mail fraud statute.

### B.

Dana also challenges the district court's second finding—that Dana did not sufficiently allege a violation of RICO. RICO imposes civil liability upon the conduct of an enterprise through a pattern of racketeering activity. The district court held that multiple predicate acts that are part of the same scheme to defraud do not constitute a "pattern of racketeering" under RICO. The district court noted that the allegations of multiple mailings in conjunction with the contractual arrangement at most would "constitute only one fraud." J.App. at 354.

Dana argues that the district court's holding that the pleadings were insufficient to allege a pattern is no longer good law under the Supreme Court's decision in *H.J., Inc. v. Northwestern Bell Telephone Company*, — U.S. —, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In *H.J.*, the Court held that proof of a pattern of racketeering activity requires a showing that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* 109 S.Ct. at 2900 (emphasis in original). Applying this test to the specific acts of bribery alleged to constitute a pattern, the Court stated that "petitioners claim that the racketeering predicates [the acts of bribery] occurred with some frequency over at least a 6–year period, which may be sufficient to satisfy the continuity requirement." After *H.J.*, this court reversed a district court's dismissal of a RICO claim, holding that a pattern of racketeering activity could be found even where only one scheme was involved. *Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385, 398 (6th Cir.1989). In *Blue Cross and Blue Shield of Michigan v. Kamin*, 876 F.2d 543, 545 (6th Cir.1989), holding that a single scheme is sufficient to state a violation of civil RICO, this court noted: "we do not believe that Congress intended that one could insulate himself from the reach of RICO simply by re-

---

**2.** Blue Cross argues that it could not have the requisite intent to commit mail fraud because it is a corporation. A specific corporate employee must be found to have the intent. *Louisiana Power & Light v. United Gas Pipe Line*, 642

F.Supp. 781, 803 (E.D.La.1986). However, the proposed second amended complaint does contain allegations of specific employees who sent the letters; these contentions are adequate to withstand a motion for failure to state a claim.

peatedly bilking the same victim." In the instant case, the allegations of fraud occurring for a period of seventeen years, along with the specific mailings evidencing such a scheme, are sufficient to state a claim of a pattern of racketeering activity.[3]

■ Though the district court did not explicitly decide the issue, Blue Cross also contends that the allegations of a RICO enterprise are insufficient. Under 18 U.S.C. § 1961(4) (1988), an enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Dana sued a group of corporations as defendants. Blue Cross maintains that RICO requires a corporation and another entity—union or group of individuals—to form an enterprise; and as such, they argue that Dana's pleading is insufficient. However, Blue Cross's interpretation of RICO has been rejected by federal courts. See United States v. Huber, 603 F.2d 387, 393–94 (2d Cir.1979), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (in view of the broad construction of RICO, a group of corporations can form an enterprise). As such, Dana has sufficiently alleged that a RICO enterprise exists.

Finally, BCM argues that Dana has not sufficiently pled a RICO claim against it. Under section 1962(a), the defendant must use or invest income derived from a pattern of racketeering in the operation of an enterprise which has engaged in racketeering. BCM maintains that Dana alleged no injury from BCM's use or investment of that money, and Dana therefore lacks standing to bring a section 1962(a) RICO claim against BCM. The district courts have split over the issue of standing to sue corporations receiving money from a racketeering enterprise under section 1962(a), and the Third Circuit recently decided that causation must be proved to show standing. Rose v. Bartle, 871 F.2d 331, 356–57

(3rd Cir.1989). This argument was not decided by the court below; and given the complexity of this issue, we decline to consider the issue until properly before us.

## III.

■ Dana also attacks the district court's denial of its motion for leave to amend the complaint, filed pursuant to Fed. R.Civ.P. 59(e). When the district court denies a motion to amend based upon its legal conclusion that the amended pleading would not withstand a motion to dismiss, this court reviews the legal conclusion de novo. Martin v. Associated Truck Lines, Inc., 801 F.2d 246, 248 (6th Cir.1986). The district court denied the Rule 59(e) motion, noting that:

The Court finds that plaintiff's proposed second amended complaint, in essence, alleges no more than that defendants failed to pay over or credit to plaintiffs amounts allegedly due under the terms of a written agreement between them. The Court acknowledges plaintiff's attempt to incorporate a violation of 18 U.S.C. § 664 as an additional predicate act for the purpose of alleging a pattern. However, if the Court's ruling on that issue is correct, it would not be sufficient to allege that the same acts constituted a violation of more criminal code sections to establish a pattern.

J.App. at 356a. The proposed complaint realleged the predicate act of mail fraud with greater specificity, and also included pleadings for two additional RICO violations: conversion of welfare benefit funds and RICO conspiracy. Both counts rely upon the same factual allegations of misrepresentations and omissions as the mail fraud claim. For the same reasons as above, we believe that Dana's allegations are sufficient to state a claim against both BCBSO and BCM. Thus, we hold that the leave to amend should have been granted because the amendment was not futile.[4]

---

3. Blue Cross's argument that the "pattern" requirement of RICO is unconstitutionally vague was not presented to the court below. Thus, we decline to address this issue. Newmyer, 888 F.2d at 399.

4. Blue Cross also contends that Dana lacked standing to bring a section 664 claim because Dana was not injured. Instead, the money was alleged to be the property of the Dana plans, not Dana. We hold that Dana has standing because

Blue Cross argues that the district court's denial of motion for leave to amend can be affirmed on an alternate ground—unexplained delay. Blue Cross contends that the welfare plan conversion and RICO conspiracy claims could have been filed long before, and that there is no reason why they were not filed earlier. However, in order to deny leave to amend for undue delay, Blue Cross must show prejudice. *See Moore v. City of Paducah,* 790 F.2d 557, 562 (per curiam) ("requirement of at least some significant showing of prejudice to the opponent"). Since Blue Cross did not demonstrate any prejudice, the delay in filing the amendment is not a proper grounds for denial of leave to amend.

### IV.

Blue Cross attacks the district court's denial of its Rule 12(b)(1) motion for lack of jurisdiction. Two issues are presented: the McCarran–Ferguson Act, and primary jurisdiction.

### A.

Under the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq.* (1988), no act of Congress shall invalidate, impair, or supersede any state law regulating the "business of insurance." The Supreme Court has constructed a three-part test for determining what practice constitutes the business of insurance: the practice must (1) have the effect of transferring or spreading a policyholder's risk; (2) be an integral part of the policy relationship between the insurer and the insured; and (3) be limited to entities within the insurance industry. *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 48–49, 107 S.Ct. 1549, 1553–54, 95 L.Ed.2d 39 (1987). The district court found that the ASO contracts between Blue Cross and Dana do not meet the first prong of the test because they do not involve risk underwriting:

BCBSO is paid an administrative service cost for handling and payment of plaintiff's medical claims. Because the parties to the contract do not assume a risk

for the other party, no underwriting of risks is present in this litigation.

J.App. at 341.

Blue Cross contends that the agreements are the "business of insurance" because the Ohio Department of Insurance (ODI) has interpreted the ASO contracts to be within the "business of insurance." Under the Ohio Unfair and Deceptive Practices Act (UDPA), Ohio Rev.Code § 3901.19, *et seq.* (Baldwin 1989), the ODI regulates the business of insurance by prohibiting any unfair or deceptive act or practice in the business of insurance. Pursuant to this jurisdiction, the Superintendent of Insurance in Ohio has recently ruled in a similar case that "ASO business constitutes the business of insurance" for the purposes of the State of Ohio's regulation of deceptive practices. *Unfair and Deceptive Practices Act Complaint of Blue Cross & Blue Shield of Ohio v. Schmidt, Long & Associates, Inc.* (Order of October 31, 1988). The ODI stated that the UDPA defines "insurance" as including *"any* contract issued by any regulated insurer, and not merely contracts involving risk-shifting aspects of the insurance business." *Id.* at 4 (emphasis in original).

We hold that the ASO contract is not within the "business of insurance" for the purposes of the Act. The Supreme Court stated in *Group Life and Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 230 n. 38, 99 S.Ct. 1067, 1082 n. 38, 59 L.Ed.2d 261 (1979), that "many aspects of insurance companies are regulated by state law, but are not the 'business of insurance.'" Similarly, in the instant case, Ohio has chosen to regulate ASO contracts based upon a very different definition of the "business of insurance" than that used by the Supreme Court. Clearly the ASO contract does not meet the risk-transferring prong of the Court's definition of the business of insurance. It would be improper to rely upon Ohio's definition of the "business of insurance," for the Supreme Court is the ultimate arbiter of federal statutes, not the ODI.

---

it was directly injured by the alleged conversion. Although Dana's plans lost the money,

Dana was directly responsible for funding those plans.

## B.

Blue Cross contends that the district court also lacked subject matter jurisdiction because the administrative agency, the ODI, has primary jurisdiction over this type of action. An administrative agency has primary jurisdiction over an action when a court and the agency have concurrent jurisdiction over the same matter but when no statutory provisions coordinate duties of the court and the agency. The district court decided that the ASO contracts are not insurance under Ohio law, and even if they were, Dana could not obtain the full range of relief it seeks under the UDPA.

Blue Cross argues that pursuant to the *Schmidt Long* decision, *supra,* the ODI now has the power to regulate ASO contracts. Blue Cross also contends that it would be proper to defer to the state agency which has an expertise in the area of ASO contracts and hospital cost containment. In *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 305–06, 96 S.Ct. 1978, 1987–88, 48 L.Ed.2d 643 (1976), the Supreme Court held that a fraud action against an airline was "within the conventional competence of the courts" and the judgment of the Civil Aeronautics Board (CAB), the agency with concurrent jurisdiction, was not likely to be helpful. Similarly, in *In re Long Distance Telecommunications,* 831 F.2d 627, 633–34 (6th Cir. 1987), this court decided that claims based upon fraud and deceit do not require agency expertise for their treatment because such claims are within the conventional expertise of judges. In the instant case, the ODI possesses no special competence over fraudulent misrepresentations over ASO contracts. Federal courts are capable of handling such claims. Thus, we hold that the district court properly exercised jurisdiction.

## V.

Blue Cross argues that the district court improperly denied its motion to disqualify Cooper, Straub, Walinski & Cramer (Cooper Straub) as Dana's counsel. "Findings of fact regarding the disqualification of counsel are reviewed under a standard of clearly erroneous." *re Petition by Mechem,* 880 F.2d 872, 874 (6th Cir.1989). A three-part test for disqualification exists: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *City of Cleveland v. Cleveland Electric Illuminating,* 440 F.Supp. 193, 207 (N.D. Ohio 1976), *aff'd,* 573 F.2d 1310 (6th Cir. 1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978).

The district court decided not to dismiss Cooper Straub for its representation of Blue Cross & Blue Shield Association (BC National), the national organization, in *BCBSA v. Community Mutual Insurance Co.,* C 85–7872 (N.D.Ohio 1985) (CMIC case). In the CMIC case, BC National sought to enjoin the misuse of its service mark and trade name by its members. The district court ruled that the past representation of BC National by Cooper Straub did not disqualify the firm from representing Dana because: (1) there was no previous attorney-client relationship between Cooper Straub and BCBSO; and (2) even if the subject matter of the previous suit was related to the instant lawsuit, Cooper Straub obtained no confidential information.

We hold that denial of the disqualification motion was not clearly erroneous. During the CMIC case, the predecessors to BCBSO could not have had a belief that Cooper Straub was their counsel because they were represented by their own attorneys. As such, there was no past relationship between Cooper Straub and BCBSO. In addition, the cases are not substantially related. In fact, the trademark infringement case is not even superficially related to the instant RICO case. Thus, we need not reach the issue raised by Blue Cross concerning whether the presumption of acquiring confidential information is rebuttable.

### VI.

For the foregoing reasons, we AFFIRM the denial of the motion to dismiss for lack of jurisdiction and the motion for disqualification of counsel. We REVERSE the dismissal under Fed.R.Civ.P. 12(b)(6) of the complaint and the denial of the Fed.R. Civ.P. 59(e) motion for leave to amend the complaint; and REMAND the case to the district court for further proceedings.