In re Consolidated Bankruptcy ESTATES OF DUBLIN SECURITIES, INC., Debtors.

Myron N. TERLECKY, Chapter 7 Trustee of the Consolidated Bankruptcy Estates of Dublin Securities, Inc., Dublin Management, Inc. and Dublin Stock Transfer, Inc., Plaintiffs,

v.

Jacquelyn R. COOPER aka Jackie Cooper and Chris Adams, et al. and Cynthia Hamilton, et al. and Tammie S. Paige, et al.

Bankruptcy No. 93–55053.
Adv. Nos. 96–0335, 96–0337, 96–0338 and 96–0339.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Jan. 31, 1997.

John Z. Fargo, Paul W. Leithart, II, Strip, Fargo, Schulman & Hoppers Co., L.P.A., Columbus, OH, for Plaintiff–Trustee.

Russell A. Kelm, Law Offices of Russell A. Kelm, Columbus, OH, for Defendants.

Mark Schlachet, Cleveland, OH, for Debtors.

## OPINION AND ORDER DENYING MOTION TO DISQUALIFY COUNSEL FOR CERTAIN DEFENDANTS

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on motions by Myron N. Terlecky, trustee of the jointly administered bankruptcy estates of Dublin Securities, Inc. ("DSI"), Dublin Management Co. and Dublin Stock Transfer, Inc. As trustee, Mr. Terlecky is the plaintiff in all four of the adversary actions captioned above. As plaintiff, the trustee has moved to disqualify Russell A. Kelm as counsel for many of the defendants in these actions. Kelm opposed the motions and the Court heard the matters on November 21, 1996.

The Court has jurisdiction in these proceedings under 28 U.S.C. § 1334(b). These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B), (E), (H) and (O) which this bankruptcy judge may hear and determine.

■ The trustee asserts that Kelm previously represented debtor DSI in connection with certain prepetition state court actions in Erie County, Ohio. Although Kelm appeared in those actions as the representative of certain initial unit purchasers ("IUPs") of stocks brokered by DSI, the trustee asserts that DSI and the IUPs, all of which were defendants in these state court securities fraud suits, were engaged in a joint defense. Therefore, according to the trustee, Kelm's representation of the IUPs was coordinated with the defense of DSI and Kelm received confidential information regarding DSI in that effort. DSI further paid Kelm's former firm for his services to the IUPs.

Although the parties' briefs did not set forth the legal grounds for this dispute with any specificity, ethical rules governing the conduct of attorneys before the Bankruptcy Court are as provided in Rule 83.4(f), formerly known as 2.6, of the Local Rules of the United States District Court for the Southern District of Ohio. See S.D. Ohio L.B.R. 4.0. District Court Rule 83.4(b) adopts the Model Federal Rules of Disciplinary Enforcement ("MFRD") to govern the conduct of attorneys practicing in this court. Rule IV(B) of the MFRD defines misconduct by attorneys by reference to the Code of Professional Responsibility as adopted by the Supreme Court of Ohio.

The Canons and Disciplinary Rules ("DR") adopted by the Supreme Court of Ohio to govern the conduct of attorneys in this state which impact on this dispute are Canon 4, DR 4–101 and Canon 9.

Canon 4 requires a lawyer to preserve the confidences and secrets of a client. DR 4–101 further requires that: ... a lawyer shall not knowingly (1) reveal a confidence or secret of his client; (2) use a confidence or secret of his client to the disadvantage of the client, or (3) use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure. Canon 9 requires a lawyer to avoid even the appearance of professional impropriety.

■ In this circuit a three-part test is applied to determine whether a party's attorney shall be disqualified for a conflict of interest. First, the moving party must be a former client of the adverse party's counsel. That relationship can be consensual and contractual, or it can be implied. Second, there must be a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit. Third, the attorney whose disqualification is being sought must have had access to, or was likely to have had access to, relevant confidential information in the course of his prior representation of the client. *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882 (6th Cir.1990). The primary purpose for such a disqualification is to protect the confidentiality of information received from the former client, even if such information is only potentially involved.

■ The ability to deny one's opponent the services of capable counsel is a potent weapon. This is especially so in complex proceedings such as these where the challenged counsel is familiar with the history and complexity of the IUPs' issues. Courts must be sensitive to the competing public policy interests involved: preserving client confidences and public respect on the one

hand and, on the other hand, permitting a party to retain the counsel of his choice. *Manning v. Waring, Cox, James, Sklar, and Allen*, 849 F.2d 222 (6th Cir.1988). The cases are factually driven and attempt to strike a balance between these public policy interests.

The first part of the test requires the trustee to show that Kelm had an attorney-client relationship with DSI or the other debtors, whether contractual or implied, such that Kelm could be considered to have acted as their counsel. He denies that relationship. The trustee has no witnesses to rebut that testimony because many of the persons formerly associated with DSI are deceased, imprisoned, under indictment, unavailable or perhaps, unreliable.

There was no evidence of any written contract of representation between Kelm and any of the debtors. The trustee's arguments, therefore, depend upon some showing that would compel the Court to imply such a representation. Evidence introduced for that purpose included the uncontested fact that DSI agreed to pay for legal services utilized by the IUP defendants only if such services were performed by Kelm, the indictment and conviction of one IUP for securities fraud, and Kelm's timesheet entries for his work in the prepetition state court actions.

 The mere fact that DSI paid for Kelm's services on behalf of the IUP defendants does not, as a matter of law, establish a lack of professional independence. A lawyer may be paid from a source other than the client, if the client consents after being informed of that fact and the arrangement does not compromise the lawyer's duty of loyalty to the client. American Bar Association, Model Rules of Professional Conduct, Rule 1.7. Where the party paying for the services has interests which are adverse to those of the party receiving the services, however, the representation should be scrutinized to determine if the attorney is actually representing the party paying for his services.

There was correspondence between DSI and the IUPs, and between Kelm and the IUPs which was designed to inform the IUPs of the state court action and of the representation available to them without charge if they used Kelm's services. Many of the IUP defendants exercised that option and considered Kelm their attorney. Considering the criminal actions later taken against various persons connected with DSI, and DSI's admission that it wanted to assist in the defense of the IUPs so DSI could continue to sell securities to them and others, the Court doubts that such consent was very informed. Further, while DSI and the IUPs wanted the Erie County suits to fail, DSI may have wished to keep the IUPs ignorant of certain aspects of its transactions so that such IUPs could participate in subsequent stock offerings. Therefore, DSI and the IUPs had some adverse interests. Their primary goal in those state court actions, however, was not adverse. Accordingly, the mere fact that DSI paid for Kelm's services does not show conclusively that his representation lacked independence sufficient to cause the Court to find that Kelm was actually representing DSI.

The evidence also showed that at least one of the IUPs has been convicted of securities fraud for her participation in the DSI stock brokerage scheme. The trustee believes this shows that DSI and the IUPs were essentially co-conspirators whose defense in the state court actions were intertwined. Such joint effort leads the trustee to believe that Kelm represented both DSI and the IUPs and, of necessity, received confidential communications from DSI, as well as from the IUPs, for that joint defense.

Review of Kelm's timesheets between February 1992 and March 1993 show more than 50 communications with the chief operating officer and majority shareholder of DSI, C.J. "Red" Eyerman, or, later, with Eyerman's daughter. Eyerman was the contact person for Kelm for the IUPs in those lawsuits because many of the IUPs were Eyerman's family members or friends. Likewise, there were at least 35 communications with DSI's former counsel, also a defendant in the Erie County litigation, and with that former counsel's new counsel, as well as 25 or more contacts with DSI's new counsel. The defendants were discussing their strategy and coordinating their defense. One issue, there-

fore, is whether DSI was controlling Kelm's efforts on behalf of the IUPs such that DSI was actually Kelm's primary client.

Kelm testified that he never represented DSI and that his communications with Eyerman were only in Eyerman's capacity as a representative of the IUPs and not as the representative of DSI. Unfortunately, Eyerman is now deceased. He and other persons connected with DSI and the other debtors have been convicted or are under indictment for securities fraud. Therefore, the trustee has many practical difficulties in any matter requiring witness testimony from a representative of DSI or the other debtors to rebut Kelm's assertions.

■ Much of the case law on implied relationships between an attorney and client relates to preliminary consultation between a prospective client and an attorney, even though retention is not a result of such a consultation. *See e.g., Westinghouse Elect. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir.1978), *cert. den.* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978). The more analogous cases, however, involve the sharing of information between co-defendants in a criminal proceeding, where an attorney later uses this information "to the detriment of one of the co-defendants, even though that co-defendant is not the one which [the attorney] represented in the criminal case." *Westinghouse,* at 1319. What distinguishes an implied professional relationship from no relationship at all, however, is the "client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." *Westinghouse* at 1319 (quoting McCormick on Evidence (2d ed. 1972) Section 88, p. 179). Thus, for the trustee to establish that an implied attorney-client relationship existed, he must show that DSI believed and manifested that it was retaining Kelm and his former firm for DSI's benefit, as well as for the benefit of the IUPs. The Court realizes that the trustee is handicapped by a lack of available credible witnesses to present evidence which would compel the court to imply an attorney-client relationship between DSI and Kelm. Were such a relationship to be shown, the substantial relationship test would

be met because the facts underlying the trustee's action against the IUPs are very similar to the facts underlying the prepetition state court actions. Were the Court able to imply the attorney-client relationship, however, the third prong of the test, that Kelm acquired confidential information from DSI, would still have to be shown.

■ There is case law which this Court finds to be well reasoned and close to these proceedings on its facts, which holds that the exchange of confidential information is not presumed when the professional relationship is implied, rather than expressly contractual. *GTE North, Inc. v. Apache Products Co.,* 914 F.Supp. 1575, 1580 (N.D.Ill.1996). Although the GTE court found that it had evidence of the exchange of confidential information among certain co-defendants, it did not make use of any presumption in that finding. Thus, even though this Court could find that a professional relationship was created by the joint coordination of defenses in the state court actions, there is no presumption available to find that confidences, rather than merely trial strategies, were exchanged.

The trustee believes that in the conduct of the joint defense, Kelm was privy to many confidential communications relating to DSI and the other debtors and their stock brokerage operations. If Kelm now represents the defendant IUPs in a suit where the plaintiff-trustee is the representative of DSI, the trustee believes a clear and irreconcilable conflict of interest or appearance of impropriety is created. Further, according to the trustee, Kelm's present representation of the IUPs in this action where DSI is the adversary means Kelm will be using the confidential communications he received from DSI in the earlier state court actions against DSI in these adversary proceedings. Kelm, however, denies that he ever represented DSI and denies that he ever received any confidential communications relating to the activities or operations of DSI or the other debtors.

The Court lacks sufficient evidence to imply an attorney-client relationship between DSI and Kelm for the purposes of disqualification under Canon 4. However, the Court believes that the defendants in the state court actions were strongly coordinating

their defenses in these actions. Were there proof of the exchange of confidential information in that effort, this Court would disqualify Kelm under Canon 9. The Court has no such evidence, however. The only evidence on that issue is Kelm's testimony that no information confidential to DSI or the other debtors was imparted to him. Accordingly, under the facts and circumstances of this matter, the Court must deny the trustee's motion, and Kelm's understanding of professional requirements must govern his actions in this matter.

Based on the foregoing, the trustee's motion to disqualify Kelm is DENIED.

**IT IS SO ORDERED.**