RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0309p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

BARBARA JEAN BOWERS, M.D.,
　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

THE OPHTHALMOLOGY GROUP,
　　　　　　　　*Defendant-Appellee.*

No. 12-6129

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 5:12-cv-00034—Joseph H. McKinley, Jr., Chief District Judge.

Argued: June 21, 2013

Decided and Filed: October 25, 2013

Before: MOORE and GRIFFIN, Circuit Judges; SARGUS, District Judge.[*]

_____

### COUNSEL

**ARGUED:** Stephen M. Bowers, Franklin, Kentucky, for Appellant. Kerry D. Smith, McMURRY & LIVINGSTON, PLLC, Paducah, Kentucky, for Appellee **ON BRIEF:** Stephen M. Bowers, Franklin, Kentucky, for Appellant. Kerry D. Smith, McMURRY & LIVINGSTON, PLLC, Paducah, Kentucky, for Appellee.

　　　　MOORE, J., delivered the opinion of the court, in which SARGUS, D. J., joined. GRIFFIN, J. (pp. 12–16), delivered a separate dissenting opinion.

_____

### OPINION

_____

　　　　KAREN NELSON MOORE, Circuit Judge. When a prior attorney-client relationship exists between a party and an opposing party's counsel, the opposing party's

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

counsel must be disqualified if confidential information was shared in the prior matter and that matter is substantially related to the current one. In this appeal, we consider the meaning of "substantially related."

Plaintiff-Appellant, Barbara Jean Bowers, M.D., is an ophthalmologist in Paducah, Kentucky. From 2002 to 2010, Bowers was a partner of The Ophthalmology Group LLP, defendant-appellee. After being expelled from the partnership in 2010, Bowers filed the instant suit, seeking relief for gender discrimination and retaliation under both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and Kentucky law. Bowers also moved to disqualify defendant's counsel, an attorney at McMurray & Livingston PLLC ("M&L"), at the district court based on a conflict of interest: another attorney at M&L previously represented Bowers in a substantially related matter.

The district court granted summary judgment in favor of defendant because Bowers, as a former partner of The Ophthalmology Group, was not an "employee" under Title VII. As a result, the district court dismissed without prejudice Bowers's state-law claims, declining to exercise supplemental jurisdiction. Lastly, the district court denied Bowers's motion to disqualify M&L "as moot." Bowers appeals those decisions of the district court and asks this court to disqualify M&L on appeal, a request that was previously denied in a single-judge order from this court. Finding that M&L's prior representation of Bowers is substantially related to the present case, we **GRANT** Bowers's motion to disqualify M&L on appeal, **VACATE** the district court's grant of summary judgment, and **REMAND** the case for further proceedings with instructions to disqualify M&L on remand.

## I. BACKGROUND

Bowers joined The Ophthalmology Group as an employee in 1999. In 2002, she became one of six partners of The Ophthalmology Group after buying into the partnership and signing a partnership agreement. On November 9, 2009, Bowers tendered a resignation letter to her partners. Although Bowers did not give a date of

departure, the partnership agreement required a one-year notice. On March 4, 2010, the partners voted to expel Bowers from the partnership. The following day, Bowers was given notice of her expulsion and the reason behind it: her "Chapter 7 bankruptcy and the creditors' proceedings associated with such bankruptcy and other personal conduct . . . which the Partnership, in its opinion, finds detrimental to the Partners and the Partnership." R. 7-8 (Expulsion Letter at 1) (Page ID #114).

After exhausting her administrative remedies, Bowers filed the instant suit on March 5, 2012. In her amended complaint, Bowers alleged: (Count 1) gender discrimination under Title VII; (Count 2) wrongful termination in breach of contract and/or in violation of public policy under Kentucky common law; (Count 3) gender discrimination under Kentucky Revised Statute 344.040; (Count 4) retaliation for complaining about gender discrimination under Title VII; (Count 5) retaliation for complaining about gender discrimination under Kentucky Revised Statute 344.280; and (Count 6) misappropriation of name by defendant for commercial advantage under the common law of Kentucky. R. 14 (Am. Compl. at ¶¶ 88–104) (Page ID #945–51).

On March 30, 2012, defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b) for failure to state a claim and lack of subject-matter jurisdiction, attaching more than eight-hundred pages of evidence in support (materials that were prepared in other matters involving the present parties). R. 6 (Def. Mot. to Dismiss) (Page ID #42); R. 7 (Def. App.) (Page ID #78–910). Defendant argued that the evidence established that Bowers was a partner of The Ophthalmology Group and therefore could not file suit under Title VII. After receiving an extension, Bowers responded to defendant's motion on May 3, 2012, attaching more than three-hundred pages of evidence. R. 17 (Pl. Resp.) (Page ID #961–1343). In her response, Bowers noted correctly that "[b]ecause the Defendant has attached documentation including sworn testimony from a previous lawsuit between the parties, Plaintiff infers that Defendant is likewise moving for summary judgment under FRCP 56." *Id*. at 3 (Page ID #963). Bowers argued that she could avail herself of Title VII protections because she was merely a nominal partner. *Id.* at 13 (Page ID #973).

On May 16, 2012, Bowers filed a motion to disqualify defendant's counsel. R. 24 (Pl. Mot. to Disqual.) (Page ID #1349–55). Bowers pointed to two instances where a past attorney-client relationship existed between her and defendant's counsel, an attorney at M&L.[1] First, another attorney at M&L represented Bowers when she attempted to establish an additional ophthalmology practice in Louisville, Kentucky in 2008. Second, M&L counseled and advised The Ophthalmology Group regarding the potential expulsion of a male partner in 2005. The Ophthalmology Group responded to Bowers's motion to disqualify, attaching confidential documentation to support its argument that there was no conflict from the prior attorney-client relationship between M&L and Bowers. R. 29 (Def. Resp. to Pl. Mot. to Disqual.) (Page ID #1752–1864).

In an order filed August 22, 2012, the district court converted defendant's motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), and granted the motion in favor of defendant. R. 41 (D. Ct. Op. at 2, 11) (Page ID #1968, 1977). The district court determined that "as a matter of law, Bowers was a partner in the Ophthalmology Group" and that as such, "Bowers is not entitled to bring claims under Title VII." *Id*. at 10 (Page ID #1976). The district court declined to exercise supplemental jurisdiction over Bowers's state-law claims and dismissed them without prejudice. *Id*. at 11 (Page ID #1977). The district court also denied "as moot" Bowers's motion to disqualify defendant's counsel because it had granted summary judgment to defendant and had dismissed Bowers's remaining state-law claims. *Id*. Bowers timely appealed and filed a motion to disqualify defendant's counsel on appeal. A single judge of this court denied that motion but noted that the issue could be reexamined by the merits panel. *Bowers v. The Ophthalmology Group*, No. 12-6129 (6th Cir. December 28, 2012) (unpublished order).

---

[1]Given that there is no dispute that the conflict in the present case could be imputed, this opinion will not identify which attorneys at M&L worked on which matters. This is not to say, however, that all former-client conflicts are imputed across an entire firm. *See, e.g.,* MODEL RULES OF PROF'L CONDUCT R. 1.9 cmt. 4 (2011); *id.* at R. 1.10.

## II.  DISQUALIFICATION OF DEFENDANT'S COUNSEL ON APPEAL

Bowers argues that defendant's counsel must be disqualified on appeal because of a conflict of interest.  In particular, Bowers alleges that M&L represented her in two matters that are substantially related to the present case:  (1) Bowers's attempt to establish an additional practice in Louisville and (2) The Ophthalmology Group's potential expulsion of a male partner.  We agree with Bowers that M&L must be disqualified.

As adopted in *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, disqualification of counsel is appropriate if  "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." 900 F.2d 882, 889 (6th Cir. 1990).  Our decisions have not made clear how the *Dana* analysis operates in conjunction with this court's rule that attorneys are "subject to the rules of professional conduct or other equivalent rules of the state where the attorney's principal office is located."  6TH CIR. R. 46(b); *compare Dana*, 900 F.2d 882 (involving federal and state-law claims), *with Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 472 F.3d 436 (6th Cir. 2007) (applying the Michigan Rules of Professional Conduct to disqualify an attorney on appeal).  Regardless, the effect of using the Kentucky Rules of Professional Conduct in place of or in conjunction with our *Dana* analysis is minimal at best because the relevant Kentucky Rule is essentially the same: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in . . . a substantially related matter in which that person's interests are materially adverse to the interests of the former client."  KY. S. CT. R. 3.130(1.9)(a). Similarly, the relevant Kentucky Rules of Professional Conduct discussed in this opinion are the same as the American Bar Association's (ABA) Model Rules of Professional Conduct.  *See, e.g.,* MODEL RULES OF PROF'L CONDUCT R. 1.9(a) (2011) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in . . . a substantially related matter in which that person's interests are materially

adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.").

Applying this framework to M&L's representation of Bowers in her efforts to establish an additional practice in Louisville, there is no dispute that a past attorney-client relationship between Bowers and M&L existed during that representation and that M&L acquired confidential information. Therefore, our resolution turns on whether M&L's representation of Bowers in her attempt to establish a practice in Louisville is "substantially related" to the present case. We have not explored previously the contours of what constitutes "substantially related," so we take this opportunity now to do so.

Complicating matters slightly is that the comments to Rule 1.9 make clear that the "former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter."[2] KY. S. CT. R. 3.130(1.9 cmt. 3); MODEL RULES OF PROF'L CONDUCT R. 1.9 cmt. 3 (2011); *see* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 132 cmt. d(iii) (2000) ("A concern to protect a former client's confidential information would be self-defeating if, in order to obtain its protection, the former client were required to reveal in a public proceeding the particular communication or other confidential information that could be used in the subsequent representation."). Given this limitation, we must determine whether matters are "substantially related" while avoiding specific inquiries into the attorney's representation of a now-adverse client.

The comments to Rule 1.9 state that "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information *as would normally have been obtained* in the prior representation would materially advance the client's position in the subsequent matter." KY. S. CT. R. 3.130(1.9 cmt. 3) (emphasis added); MODEL RULES OF PROF'L

---

[2]For this reason, our prior single-judge order was wrong to state that "it [has not] been shown that any confidential information was disclosed that would pose a conflict." *Bowers v. The Ophthalmology Group*, No. 12-6129 (6th Cir. December 28, 2012) (unpublished order).

CONDUCT at R. 1.9 cmt. 3 (emphasis added); *see* RESTATEMENT (THIRD) OF THE LAW

GOVERNING LAWYERS § 132 (2000).  In a well-regarded opinion, a federal district court

in Kansas explained:

> In determining whether a substantial relationship exists, the court evaluates the similarities between the factual bases of the two representations.  A commonality of legal claims or issues is not required. At a functional level, the inquiry is whether the attorneys were trying to acquire information vitally related to the subject matter of the pending litigation.  To accomplish this inquiry, the court must be able to reconstruct the attorney's representation of the former client, to infer what confidential information could have been imparted in that representation, and to decide whether that information has any relevance to the attorney's representation of the current client.  What confidential information could have been imparted involves considering what information and facts ought to have been or would typically be disclosed in such a relationship.  Consequently, the representations are substantially related if they involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct.

*Koch v. Koch Indus*., 798 F. Supp. 1525, 1536 (D. Kan. 1992) (quotation marks and

citations omitted); *see* Charles W. Wolfram, *Former Client Conflicts*, 10 Geo. J. Legal

Ethics 677, 716 (1997) (describing the *Koch* standard as "the most apt delineation of

how 'substantial relationship' should be determined").  The analyses under the Kentucky

Rules, the Model Rules, and *Koch* are essentially the same:  the court must look to the

general type of information that the potentially conflicted lawyer would have been

exposed to in a normal or typical representation of the type that occurred with the now-

adverse client.  *See* GEOFFREY C. HAZARD & W. WILLIAM HODES, THE LAW OF

LAWYERING § 13.5 (3d ed. 2013).  Admittedly, this approach has its difficulties, most

notably that reconstructing a representation using generalities is less exact than

examining what actually happened.  Nonetheless, this method presents a necessary

alternative to engaging with the specific—perhaps confidential—facts surrounding a

potentially conflicted attorney's prior representation of a now-adverse client.[3]  *See*

---

[3]In fact, the present case illustrates an additional danger with the use of confidential information. M&L should not have attached confidential documentation regarding its representation of Bowers to The Ophthalmology Group's reply to Bowers's motion to disqualify counsel.  At the district court, M&L

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 132 cmt. d(iii) (2000) ("The substantial-relationship test avoids requiring disclosure of confidential information by focusing upon the general features of the matters involved and the inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation."); *see also Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir. 1983) ("The 'substantial relationship' test has its problems, but conducting a factual inquiry in every case into whether confidences had actually been revealed would not be a satisfactory alternative."). Adopting these approaches now, we must examine whether there is a substantial risk that confidential information as would normally or typically have been obtained in M&L's prior representation of Bowers would materially advance The Ophthalmology Group's position in the present case.[4]

Applying this approach, we conclude that M&L's representation of Bowers in her attempt to establish an additional practice in Louisville is substantially related to the present case. In a normal or typical representation of this type, M&L likely would have obtained confidential information regarding Bowers's relationship with her partners at The Ophthalmology Group. When a partner seeks to establish an additional practice separate from her partnership, it seems very likely that the partner would discus her

---

asserted that the disclosure of such information was permissible:

> The use of otherwise confidential file material related to Dr. Bowers is permissible pursuant to Ky. SCR Rule 3.130[1.6(b)(3)] (Model Rule 1.6(b)(3)) ("A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary. . . to respond to allegations in any proceeding . . . concerning the lawyer's representation . . .").

R. 29-1 (Def. Memo in Resp. to Pl. Mot. to Disqual. at 8 n.3) (Page ID #1760). Contrary to what M&L argued at the district court, the commentary to Rule 1.6 makes it absolutely clear that Rule 1.6 "governs the disclosure by a lawyer of information relating to the representation of a client during the lawyer's representation of the client" and instructs the reader to see "Rule 1.9(c)(2) for the lawyer's duty not to reveal information relating to the lawyer's prior representation of a former client." KY. S. CT. R. 3.130(1.6 cmt. 1); MODEL RULES OF PROF'L CONDUCT at R. 1.6 cmt. 1. Rule 1.9(c)(2) states: "A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter . . . reveal information relating to the representation except as these Rules would permit or require with respect to a client." KY. S. CT. R. 3.130(1.9(c)(2)); MODEL RULES OF PROF'L CONDUCT at R. 1.9(c)(2). M&L has failed to identify any rule that would permit or require the disclosure of such information, and we fail to see one that would apply.

[4]Because it did not occur here, we express no opinion on the district court's ability to conduct an in camera review of evidence related to M&L's prior representation of Bowers at the request of *Bowers*, the party seeking disqualification.

confidential motivations for doing so with her attorney. For example, in the present case Bowers could have disclosed to M&L that she was not establishing an additional practice because she felt powerless at The Ophthalmology Group but simply because she wanted to make more money. This would be detrimental to Bowers's Title VII claim because she alleged that The Ophthalmology Group discriminated against her by not giving her powers that were otherwise accorded to full partners. It seems equally likely that an attorney in this type of representation would want to understand whether there could be backlash from the partnership towards her client for establishing an additional, separate practice. Imagine a scenario that could have happened in the present case in which Bowers communicates to M&L: "Who cares what my partners think, I am a full partner too, so I can do as I please." This information would undermine Bowers's Title VII claim, as pleaded, because it would cut against her assertion that she is merely a "nominal" partner (and therefore can avail herself of Title VII's protections).

Given these scenarios, there is a substantial risk that confidential information as would normally or typically have been obtained in M&L's prior representation of Bowers would materially advance The Ophthalmology Group's position in the present case. Therefore, the matters are substantially related under *Dana*. For this reason, we grant Bowers's motion to disqualify M&L from representing The Ophthalmology Group on appeal. Given this ruling, we need not address whether M&L's counseling of The Ophthalmology Group (which included Bowers at the time) when it considered expelling one of its male partners requires disqualification under *Dana*. Likewise, we have no occasion to address any other issues presented on this appeal. We remand the case to the district court for further proceedings with instructions to disqualify M&L on remand.

### III.  DISQUALIFICATION OF DEFENDANT'S COUNSEL AT THE DISTRICT COURT

As this case illustrates, when counsel is disqualified, a court should not reach the other questions or motions presented to it through the disqualified counsel. Here, however, the district court first granted summary judgment in favor of The Ophthalmology Group and then dismissed Bowers's motion to disqualify "as moot." On

appeal, The Ophthalmology Group asserts that "[t]here is nothing extraordinary about a district court denying 'as moot' a motion to disqualify counsel when it has decided to dismiss the underlying case." Appellee Br. at 58. We disagree and observe that the cases cited by The Ophthalmology Group in support of its position do little to convince us otherwise because none offer any analysis on the issue. *See Bardsley v. Powell, Trachtman, Logan, Carrle & Bowman, P.C.*, 916 F. Supp. 458, 465 (E.D. Pa.) (denying plaintiff's motion to disqualify counsel as moot after granting summary judgment in favor of defendants), *aff'd*, 106 F.3d 384 (3d Cir. 1996) (table); *Shanley v. Hanna*, No. 97-CV-1849(NPM), 1998 WL 146250, at *4 (N.D.N.Y. March 24, 1998) (unpublished decision) ("Inasmuch as the court grants defendants [sic] motion [to dismiss], it need not address the defendants [sic] remaining contentions nor defendants [sic] motion to disqualify [plaintiff's] attorney."); *In re Hildreth*, 165 B.R. 429 (Bankr. N.D. Ohio 1994) (dismissing debtors' Chapter 12 bankruptcy case and holding moot creditor's motion to disqualify debtor's counsel).

A district court must rule on a motion for disqualification of counsel prior to ruling on a dispositive motion because the success of a disqualification motion has the potential to change the proceedings entirely. This is especially important when a district court rules on a Rule 56 motion for summary judgment. The reason is simple: if counsel has a conflict from previously representing the party seeking disqualification, as was alleged in the present case, there is a risk that confidential information could be used in preparing or defending the motion for summary judgment in violation of *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882 (6th Cir. 1990), or the relevant state rules of professional conduct. In other words, a potentially conflicted counsel's confidential information could infect the evidence presented to the district court. Therefore, a district court must reach the merits of a disqualification motion before ruling on a dispositive motion.[5] For this reason, the district court erred in the present case by failing to rule on the merits of Bowers's motion to disqualify defendant's

_____

[5]Perhaps this concern is not as great when a district court rules on a Rule 12(b)(6) motion to dismiss because, unlike a Rule 56 motion that relies on evidence, a Rule 12(b)(6) motion is based solely on the pleadings. Nonetheless, even when a Rule 12(b)(6) motion is involved, a district court should rule first on the motion to disqualify counsel to avoid any chance of infecting the proceedings.

counsel prior to granting summary judgment in favor of defendant. Therefore, we vacate the district court's summary-judgment ruling and remand the case for proceedings consistent with this opinion. Given our holding disqualifying M&L on appeal, the district court need not conduct a disqualification hearing but is, instead, instructed to disqualify M&L on remand. Defendant must obtain counsel not subject to a conflict of interest to ensure that the further proceedings are not subject to the possible taint of confidential information.

## IV. CONCLUSION

For the reasons set forth in this opinion, we **GRANT** Bowers's motion to disqualify M&L, The Ophthalmology Group's counsel on appeal, **VACATE** the district court's grant of summary judgment, and **REMAND** the case for further proceedings with instructions to disqualify M&L on remand.

---

**DISSENT**

---

GRIFFIN, Circuit Judge, dissenting.  I respectfully dissent.  While I agree with the majority that the district court erred in failing to rule on the merits of plaintiff Bowers's motion for disqualification of counsel prior to ruling on defendant The Ophthalmology Group's dispositive motion, any error in this regard was harmless in light of Bowers's failure to establish a conflict of interest—specifically, that McMurry & Livingston PLLC's ("M&L's") prior and current representations are "substantially related" as required by the applicable rules of professional conduct.  Because the district court did not otherwise err in determining that defendant was entitled to summary judgment as a matter of law with regard to Bowers's Title VII claims, I would affirm.

"Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary."  *Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), *aff'd* 5 F. App'x 396 (6th Cir. 2001) (citation and internal quotation marks omitted).  A party seeking disqualification carries a heavy burden and must meet a high standard of proof.  *Id.* (citation omitted).  Under the analogous requirements of Ky. S. Ct. R. 3.130 (1.9(a)), ABA Model Rules of Professional Conduct 1.9(a) (2011), and this circuit's tripartite test in *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990), a former client moving for disqualification must demonstrate, inter alia, that "the matters embraced within the pending suit are substantially related to the matters or causes of action wherein the attorney previously represented [the former client]."  *Gen. Elec. Co. v. Valeron Corp.*, 608 F.2d 265, 267 (6th Cir. 1979) (citation omitted).  "Matters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."  ABA Model Rules of Professional Conduct 1.9 cmt.

3; *see also* KY. S. CT. R. 3.130 (1.9 cmt. 3) (same). "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." ABA Model Rules of Professional Conduct 1.9 cmt. 2.

As the basis for her motion for disqualification, Bowers points to two prior instances in which M&L represented her: (1) defendant's potential expulsion of a male partner in 2005, and (2) her attempt to establish a practice in Louisville, Kentucky in 2008. The existence of an actual past attorney-client relationship stemming from these consultations is not in dispute in this case. However, contrary to Bowers's assertions, disqualification is not required because these matters bear no "substantial relationship" to the present Title VII action.

In 2005, defendant's partners became concerned about rumors of inappropriate relations between one of their physicians and non-parties to this case. Defendant's partners engaged in joint discussions, where all partners (including Bowers) were present, with M&L's attorneys regarding the prospect of expelling the physician. In the course of these consultations, M&L prepared a draft indemnification agreement that inured to the benefit of defendant; however, the agreement was never signed or executed because the offending physician rectified his conduct to the satisfaction of defendant's partners.

This 2005 matter obviously does not involve "the same transaction or legal dispute" as the present case, which entails issues of alleged gender discrimination and retaliation, and Bowers's subsequent bankruptcy, insolvency, and purported diversion of business to a competitor. Moreover, since the 2005 legal consultations transpired in the context of group partnership meetings with M&L's attorneys, no communications were made by Bowers to counsel that were unknown to the other physicians and hence there was not "a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance [defendant's] position in the subsequent matter." ABA Model Rules of Professional Conduct 1.9 cmt. 3.

Nor is the present case "substantially related" to M&L's 2008 representation of Bowers on an individual basis in her aborted attempt to establish a practice in Louisville. Bowers sought to perform refractive surgery on a once-a-week basis in Louisville while overseeing her restaurant there, a franchise of the Mongolian Grill. In 2008, defendant's practice manager referred Bowers to an attorney with M&L, for the purpose of creating a corporate entity known as Refractive Surgery of Louisville, PLLC. Bowers's activities in Louisville would have no competitive effect on defendant's medical practice in Paducah, over 200 miles away, and her proposal was made with the knowledge and consent of defendant's partners. However, Bowers's plans never materialized because she ultimately decided, for various reasons, including the failure of her restaurant business, not to perform medical procedures in Louisville. Bowers's PLLC was never used, and it was administratively dissolved in 2009.

The events underlying the present litigation started in late 2009 and early 2010. On November 9, 2009, Bowers tendered a resignation letter to defendant's partners. Although her partnership agreement required a one-year notice, she did not state when she intended to depart. Bowers allegedly began secret discussions with a direct competitor, Eyecare Associates, which had an office across the street from defendant in Paducah.

On February 25, 2010, Bowers filed a Chapter 7 bankruptcy petition to resolve her restaurant debt. That same month, she unilaterally added the office location of Eyecare Associates to malpractice insurance coverage paid for by defendant. Shortly thereafter, defendant's partners learned that Bowers intended to work with Eyecare Associates. On March 4, 2010, after consulting with an M&L attorney, they unanimously voted to expel Bowers from the partnership, citing "your Chapter 7 bankruptcy and . . . other personal conduct on your part which the Partnership, in its opinion, finds detrimental to the Partners and the Partnership . . . ." In March 2012, Bowers filed the instant action against defendant, alleging gender discrimination and retaliation under Title VII, and violations of state law. A state-court action is also pending. Defendant is represented by M&L in these cases.

Unlike the majority, I simply cannot conclude that M&L's limited 2008 transactional work for Bowers for the narrow purpose of forming a now-defunct company, with the full knowledge and consent of defendant, is substantially related to the present matter, so as to justify the disqualification of M&L in this case. The majority's opinion is rife with speculative scenarios regarding confidential information that Bowers may have shared with M&L regarding her relationship with her partners in The Ophthalmology Group. But Bowers's conclusory assertions that issues in the former and current representations are related and that confidences were imparted to M&L in the 2008 consultations that would unfairly advance defendant's cause herein do not suffice to fulfill the heavy burden on Bowers to justify disqualification. M&L's assistance in setting up a corporation, and the personal financial information imparted by Bowers that predominated this task, have little or no relationship to her current claims of discrimination and retaliation in violation of federal and state law. Bowers's failure to establish this essential element dooms her argument that a conflict of interest exists.

Reaching the merits of defendant's dispositive motion to dismiss, I would affirm the district court's grant of summary judgment in favor of defendant for the reasons stated in its well-reasoned decision below. As the district court properly determined, Bowers was a partner of The Ophthalmology Group, not an "employee" afforded protection under Title VII.

"The determination of whether a plaintiff qualifies as an employee under the Act 'is a mixed question of law and fact' that a judge normally can make as a matter of law." *Weary v. Cochran*, 377 F.3d 522, 524 (6th Cir. 2004) (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992)). In making this determination, this court looks to the common-law agency test, in which "appellate consideration reviews numerous factors impacting the employment relationship to be judged in arriving at a decision with no one decisive factor." *Simpson v. Ernst & Young*, 100 F.3d 436, 443 (6th Cir. 1996); *see also Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir. 2004). The district court correctly held that the relevant indicia of being an "employee" are not present in this case; instead, the evidence of record clearly demonstrates that Bowers enjoyed

partnership status through a partnership agreement, engaged in decision-making with her partners, and was compensated according to a partnership formula. Defendant was therefore entitled to judgment as a matter of law with regard to Bowers's Title VII gender discrimination and retaliation claims, and the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Bowers's remaining state-law claims.

For the foregoing reasons, I would affirm the district court's judgment.