# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 16, 2014       Decided July 21, 2015

No. 13-7038

PATRICIA GRIMES, AS THE NEXT BEST FRIEND AND PERSONAL
REPRESENTATIVE OF THE ESTATE OF KARL GRIMES,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-02024)

*Gregory L. Lattimer* argued the cause and filed the briefs for appellant.

*Mary L. Wilson*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With her on the brief were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, at the time the brief was filed. *Loren L. AliKhan*, Deputy Solicitor General, Office of the Attorney General for the District of Columbia, entered an appearance.

Before: GRIFFITH and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

Concurring opinion filed by *Circuit Judge* GRIFFITH.

PILLARD, *Circuit Judge*: Juvenile Detainee Karl Grimes allegedly was beaten to death in November 2005, at the District of Columbia's Oak Hill Juvenile Detention Facility. His mother, Patricia Grimes, has sued the District of Columbia on behalf of her son's estate. She claims the District of Columbia showed deliberate indifference to, and reckless disregard for, her son's safety, and that the District was negligent in hiring, training, and supervising its employees at Oak Hill in violation of District of Columbia tort law, the Eighth Amendment, and 42 U.S.C. § 1983. The district court granted the government's motion for summary judgment, and denied as moot Grimes's cross-motion to strike the summary judgment motion and to disqualify the Attorney General of the District of Columbia based on an asserted conflict of interest. Grimes contends that the district court should not have granted summary judgment before ruling on her motion to disqualify the Attorney General, and that the court incorrectly granted summary judgment as conceded before she had obtained necessary discovery.

The district court erred in the sequence in which it rendered its decisions. Because a claim of counsel's conflict of interest calls into question the integrity of the process in which the allegedly conflicted counsel participates, the court should resolve a motion to disqualify counsel before it turns to the merits of any dispositive motion. That procedure was not followed here. We therefore vacate the district court's grant of summary judgment and its denial of the motion to

disqualify and remand this case for further proceedings. Because the district court will decide in the first instance whether there was a conflict of interest or an appearance of such a conflict in violation of applicable ethics rules and, if so, will determine the appropriate remedy, we offer only limited guidance on the remaining issues the parties briefed and leave to the district court to decide them in view of its ruling on the merits of the motion to disqualify.

## I.

Our legal system is not at its finest when a mother's case seeking redress for the sudden and violent death in government custody of her healthy teenaged son is lost in a muddle of scheduling inattention, miscommunication, and lack of follow-up. Oak Hill juvenile detention facility was for decades notorious for overcrowding, inhumane and unsafe conditions, and unresponsiveness to the needs of incarcerated youth. The District of Columbia faced class action litigation over its failings at Oak Hill, entered a consent decree requiring court-appointed monitors, and violated the decree so systematically for so long that it paid millions of dollars in court-ordered fines. Oak Hill was the subject of critical findings by the Inspector General, a mayoral Blue Ribbon Commission, a court-ordered monitor, witnesses before the D.C. Council and Congress, and was ultimately put under a court-ordered receivership. The District closed Oak Hill in 2009.[1] That is the facility where Karl Grimes died.

---

[1] *See generally District of Columbia v. Jerry M.*, 738 A.2d 1206 (D.C. 1999); *Review of Deficiencies at the District of Columbia's Youth Services Administration: Hearing 108-742 Before the Subcomm. of the Senate Comm. on Appropriations*, 108th Cong. 25 (2004) (Prepared statement of Ronald S. Sullivan Jr., Esq., Director, Public Defender Service) (stating that "[t]he observations

4

Rigorous fact discovery and evidentiary testing by motion or trial might well have established that, despite public assertions of inadequate supervision and frequent violence among incarcerated youth at Oak Hill, none of it played any role in Karl Grimes's death. Had factual material been presented and scrutinized, we might better understand the District of Columbia government's denial of any "history of assaults on youth at Oak Hill." *Grimes v. District of Columbia*, 923 F. Supp. 2d 196, 198-99 (D.D.C. 2013); *see also* Appellee's Br. 25, 26. Without evidentiary development there is no basis for judging the facts here. That is why the civil rules provide for discovery, motion practice and, where warranted, trial. But there is more reason here than in the typical case for concern that the facts have not been discovered. It is rare that a violent death occurs against a backdrop of seemingly relevant, severe, and systemic problems, yet—at least as the record reflects—so little is done to investigate.

---

of our expert, the court-appointed monitor, and the Inspector General only hint at the breadth of the District's failure to protect children at Oak Hill from harm. Violent incidents—including knife fights and assaults serious enough to result in broken jaws—occur with alarming frequency at Oak Hill. Life on the residential units at Oak Hill is quite harsh and, accordingly, not at all conducive to treatment."); Henri E. Cauvin, *Overcrowding at D.C. Youth Center Draws Criticism*, Wash. Post, Jan. 21, 2010, http://www.washingtonpost.com/wp-dyn/content/article/2010/01/20/AR2010012004707.html; James Forman Jr. & Reid H. Weingarten, *New Hope at Oak Hill*, Wash. Post, Dec. 24, 2007, http://www.washingtonpost.com/wp-dyn/content/article/2007/12/23/AR2007122302072.html; Theola Labbé, *Behind Oak Hill's Fences, Violence and Uncertainty*, Aug. 2, 2004, at B1.

This case is on its second trip to this court, and Grimes's claims have not been considered, even preliminarily, on their merits. Litigation and management of this case have not been vigorous or efficient. It appears that no lay or expert depositions have been taken, nor has documentary evidence been submitted to the district court. It is difficult to conclude that the general goal of federal court procedure—that cases should be decided on their merits rather than through procedural stumbling—has been served in this case.

Grimes filed her complaint more than six years ago. The court set a scheduling order and the parties exchanged some written discovery, but, due in large part to delays while the government moved for and obtained a protective order, discovery remained incomplete as the original discovery deadlines approached. The parties had not conducted depositions or submitted expert reports, nor had they otherwise followed up on the initial written materials they had exchanged. Grimes and the government accordingly moved in January 2010 to extend discovery before it closed. Grimes did not designate any expert while the motion was pending. Nor did she take any depositions or seek information from the government by way of interrogatories or requests for admission.

In June 2010, the district court granted the requested extensions *nunc pro tunc*, retroactively setting March 20, 2010, as the deadline for expert disclosures, and July 29 as the deadline for all other discovery. Now facing a new but already-expired deadline to identify experts and an imminent overall discovery deadline, counsel conferred and informally agreed to seek further extension of the discovery schedule; government counsel informed Grimes's counsel that he would file a motion seeking such extension.

The government did not follow through and move for a revised scheduling order, nor did it inform Grimes's counsel of its change of plans. At the same time, Grimes's counsel apparently relied on the government seeking an extension and the court granting it; the record reflects no action on his part in pursuit of discovery or protection of discovery rights during that summer. In September 2010, a month and a half after the court's second overall discovery deadline had passed, the government moved for summary judgment on the ground that Grimes lacked evidence to support the essential elements of her claims.

The District of Columbia argued that Grimes lacked evidence showing (a) deliberate indifference to a known risk of the kind of violence that resulted in Grimes's son's death, needed to support her Eighth Amendment claim, *see Farmer v. Brennan*, 511 U.S. 825, 835 (1994), (b) a policy, custom, or practice of the District of Columbia, such as is required to establish municipal responsibility under *Monell v. New York*, 436 U.S. 658, 694 (1978), and (c) negligence in hiring, training, or supervision of staff at Oak Hill needed to establish tort liability of the district for actions by violent youth in its custody. Grimes also had not identified any expert, and the government contended that she could not establish her claim of negligent hiring, training, and supervision without one.

Grimes's response did not focus on her need for discovery to oppose the motion for summary judgment, but on the Attorney General's apparent conflict of interest. Grimes's counsel had learned of the potential conflict only after the government filed its summary judgment motion. Grimes moved to strike the motion on the ground that "it was filed by improper and inappropriate counsel in violation of the Rules of Professional Conduct of the District of Columbia."

The government opposed the motion to strike on the merits and moved the court to treat its summary judgment motion as conceded in view of Grimes's failure to submit evidence in opposition to summary judgment. The district court, without discussion, granted summary judgment as conceded, and denied as moot Grimes's motion to disqualify the Attorney General and her motion for additional time within which to oppose the government's motion to treat its summary judgment motion as conceded.

Grimes timely moved to alter or amend the judgment, arguing that summary judgment should have been denied because she had not had an adequate opportunity to complete discovery to support her opposition. Grimes's motion was accompanied by an affidavit contending that additional fact discovery by deposition was needed before Grimes could submit her expert report. The district court denied that motion, and Grimes timely filed her first appeal.

An earlier panel of this court summarily vacated the district court's order. The Court of Appeals directed the district court on remand to "consider the effect of the 2010 amendments to Federal Rule of Civil Procedure 56 and 'state on the record the reasons for granting or denying the summary judgment motion,'" as required by that rule. *Grimes v. District of Columbia*, 464 F. App'x 3, 4 (D.C. Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).

On remand, the district court requested additional briefing and again entered summary judgment for the government. *Grimes v. District of Columbia*, 923 F. Supp. 2d 196 (D.D.C. 2013). The court, quoting Rule 56, concluded that "Rule 56(c) permits the movant to demonstrate 'the absence . . . of a genuine dispute' by showing 'that [the nonmovant] cannot produce admissible evidence to support'

the presence of a genuine dispute." *Id.* at 198 (district court's ellipses). The court observed that municipal liability on Grimes's Eighth Amendment claim would require evidence both that Oak Hill employees acted with deliberate indifference to a known risk to the safety of resident juveniles, and that a municipal custom, policy, or practice had caused the violation. *Id.* at 198-99. Grimes had limited her opposing submissions to requesting a chance to complete discovery and moving to strike based on the asserted conflict of interest; she proffered no evidence to support her claim. The district court thus pronounced itself "satisfied" that the government had correctly pointed to an "absence of genuine dispute as to any material fact as to plaintiff's Eighth Amendment claim." *Id.* at 199. The court further noted that liability on the claim of negligent hiring, training, and supervision would require expert witness testimony, but Grimes had not filed an expert witness report. "Plaintiff cannot possibly establish the applicable standard of care without expert testimony because the average layperson does not possess the technical knowledge needed to judge staffing and security needs at a juvenile detention facility." *Id.* Because Grimes had not introduced evidence or an expert witness report supporting those essential elements of her claims, the court concluded that the government was entitled to summary judgment under Rule 56, as amended. *Id.* This appeal followed.

## II.

We review *de novo* a district court's grant of a motion for summary judgment, and apply the more deferential abuse-of-discretion standard to a district court's denial of a motion to disqualify counsel. *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 25-26 (D.C. Cir. 2014); *Hall v. Clinton*, 285 F.3d 74, 79 (D.C. Cir. 2002).

The district court erred in failing to consider Grimes's motion to disqualify counsel for the District of Columbia before ruling on the government's summary judgment motion. The basis of Grimes's response to the government's motion for summary judgment was that Peter Nickels, then the Attorney General for the District of Columbia, had a conflict of interest disqualifying him from appearing as counsel, even *ex officio*, on this case. As Attorney General, Nickels was the lead signatory on the government's briefs in this case in the district court. Grimes's assertions of conflict of interest arose when her counsel learned that, before he became Attorney General, Nickels had represented a class of plaintiffs that included plaintiff's decedent Karl Grimes in a lawsuit claiming overcrowding and unsafe conditions, and seeking systemic reform at the Oak Hill juvenile detention facility where Grimes later died. *See* J.A. 90; *see also* Appellee Br. 34; J.A. 130 (Amended Complaint at 37, *District of Columbia v. Jerry M.*, 738 A.2d 1206 (D.C. 1999) (No. 1519-85) (alleging that "[a]s a result of the [Oak Hill] counselors' inadequate supervision of the residents, there are frequent assaults of residents by other residents" and that "[a]s a result of these actions and omissions of the defendants, many of the children residing at Oak Hill suffer physical harm")).

Grimes believed that Attorney General Nickels's role in this case thus violated applicable rules of professional conduct. Grimes brought the matter to the district court's attention in a motion to strike the motion for summary judgment and to disqualify the office of the Attorney General from representing the government in the case. Apart from his status as the principal and ultimately accountable lawyer for the District of Columbia, and the appearance of his name on the papers, there is no record of Nickels's particular involvement in this litigation. Nor, however, is there any indication of measures the government may have taken to

isolate Nickels and prevent his involvement in or influence over the supervision, strategy, or conduct of this litigation.

Grimes cites various ethical rules. The government brushes aside the conflict allegation. We do not analyze her disqualification claim here, but it appears that Grimes has raised at least a plausible claim of conflict of interest. The Rules of Professional Conduct of the District of Columbia forbid a lawyer from, *inter alia*, representing another party in the same or substantially related matter as that in which he represented a former client, where the interests of the former and current client are materially adverse. *See* D.C. Rule of Prof. Conduct 1.9. The complaint in this case raises a claim that, while distinct from the *Jerry M.* claims in important ways, seem to overlap with them: The fatal attack on Karl Grimes was allegedly due to failure on the government's part to employ sufficiently numerous and adequately trained staff to maintain a safe environment at Oak Hill.

In its response to Grimes's motion to strike, the government emphasized that Attorney General Nickels "does not serve as counsel of record in the instant matter." The government nonetheless listed the Attorney General at the top of the list of counsel on the brief, just as on earlier filings, and cited no authority that only counsel "of record" is subject to conflicts rules. The government also pointed to the Superior Court's order holding that the Attorney General's office was not conflicted off of the *Jerry M.* case itself, even though Nickels had been plaintiff's counsel in *Jerry M.* and then became Attorney General while that case was pending. The government failed to acknowledge, however, the Superior Court's observation that, in *Jerry M.*, "at the outset of Mr. Nickels's employment with the District government, it instituted measures to separate Mr. Nickels from participation in this litigation." J.A. 179. No such prophylactic separation

was shown to have been in place regarding the litigation of this case.

The district court did not consider the merits of the attorney-disqualification motion. Instead, after granting summary judgment against Grimes, the court denied that motion as moot. Typically, a district court enjoys broad discretion in managing its docket and determining the order in which a case should proceed. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151-52 (D.C. Cir. 1996); *see also In re Fannie Mae Secs. Litig.*, 552 F.3d 814, 822 (D.C. Cir. 2009); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 218 (5th Cir. 1998). That discretion is limited, however, in circumstances such as these. Because a conflict of interest could affect the fairness and impartiality of the proceeding, or the perception of fairness and impartiality, we hold that a plausible claim of conflict must be resolved before allegedly conflicted counsel or the court takes further action in the case.

For the very reasons that the ethics rules forbid lawyers to enter into representations that create conflicts of interest or the appearance thereof, a district court must promptly address allegations of conflict. As the Sixth Circuit recently held in a similar case, "[a] district court must rule on a motion for disqualification of counsel prior to ruling on a dispositive motion because the success of a disqualification motion has the potential to change the proceedings entirely." *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 654 (6th Cir. 2013). The *Bowers* court emphasized that conflicts of interest are particularly problematic at the summary judgment stage, making it "especially important" to prioritize ruling on a disqualification motion before deciding a Rule 56 motion. *Id.* For example, "if counsel has a conflict from previously representing the party seeking disqualification . . . there is a

risk that confidential information could be used in preparing or defending the motion for summary judgment . . . ." *Id.* Resolving asserted conflicts before deciding substantive motions assures that no conflict taints the proceeding, impairs the public's confidence, or infects any substantive motion prepared by or under the auspices of conflicted counsel.[2]

The structural importance of counsel's avoidance of conflicts of interest and any appearance of such conflicts, and the high respect due to binding requirements of professional responsibility, support the *Bowers* approach. Once a party moves to disqualify an adverse party's counsel, the district court may not entertain a dispositive motion filed by the very counsel alleged to be conflicted until the court has first determined whether that counsel is disqualified. As in *Bowers*, the district court here erred in first granting summary judgment and then denying as moot the motion to disqualify. That error requires us to vacate the district court's grant of summary judgment and its denial of the motion to disqualify, and remand for the district court to consider the motion to disqualify before ruling on summary judgment.[3]

---

[2] The Seventh Circuit in *Harker v. University Professionals of Illinois*, 172 F.3d 53 (7th Cir. 1999) (unpublished), denied as moot a motion to disqualify counsel in light of its decision that the case was barred by the Eleventh Amendment and the statute of limitations. There did not appear to be any argument in that case that disqualification motions must be resolved before the court rules on dispositive motions.

[3] Rule 56(e) empowers district courts in response to motions for summary judgment to issue "any . . . appropriate order." Fed. R. Civ. P. 56(e)(4). As discussed in the text, district courts must decide motions to disqualify before ruling on the merits of a summary judgment—an obligation readily accommodated by Rule 56(e)'s allowance for any "appropriate order."

The government contends that the district court implicitly denied the motion to disqualify on its merits, and that reversal is not warranted merely to require the court to make that denial explicit. The record belies that contention. The district court ruled on Grimes's Motion to Strike after it granted summary judgment before the first appeal; the court clearly stated that it denied the disqualification motion as moot in view of its grant of summary judgment. The district court did not revisit the disqualification issue after remand, when it once again granted summary judgment for the government.

The government's alternative ground—that even if the district court denied the motion to disqualify only on grounds of mootness, we should affirm the denial on the merits—requires a factual record not yet developed. Despite his name appearing on all the district court papers and his role as the chief legal officer for the District of Columbia, the government contends that Attorney General Nickels did "not serve as counsel." Nothing in the factual record here rebuts the presumption that a lawyer whose name appears on a paper filed in court bears some responsibility for it.[4] There is no evidence that, for example, the Attorney General's Office instituted measures to insulate Nickels from supervisory or other participation in this litigation, as it apparently did in the *Jerry M.* case itself. The record is equally devoid of evidence that confidential client information Nickels accessed in *Jerry M.* had any effect on the government's litigation of this case. It is unclear whether this matters if there was a clear appearance of impropriety, but we leave this to be addressed

---

[4] District of Columbia counsel's assertions in briefing that Mr. Nickels played no role in the litigation of this case are not evidence upon which a court may rely. *See, e.g.*, *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1372 (3d Cir. 1996); *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1515 n.11 (1st Cir. 1991).

on remand. We decline to consider the merits of the motion to disqualify in the first instance, before there have been appropriate factual inquiries and legal determinations in the district court.

### III.

The propriety or not of summary judgment on its merits may need to be revisited once the district court has decided the conflict-of-interest question. We limit ourselves here to some considerations that may inform the proceedings on remand.

### A.

Once the district court has resolved the merits of the motion to disqualify, it will need to determine how the litigation should proceed. In the event the court concludes there was a conflict or an appearance of impropriety, it will have to decide whether the effects were prejudicial or harmless. Grimes assumes that, if Attorney General Nickels was conflicted, the appropriate remedy would be to strike the motion for summary judgment. That may be, but it is not necessarily so. The nature and scope of any conflict invariably would inform whether the proper response would be as Grimes suggests, or whether a different cure would be appropriate.

If the district court determines that there was no conflict, it will similarly need to consider how to proceed. The record does not suggest that Grimes wishes to abandon her claims, but it also appears to lack evidence needed to carry them over the summary judgment threshold. Grimes protests that she was unable to complete discovery. She does not explain, however, what she was doing during the discovery time she had.

Rule 56(e) specifically empowers a court to give a party who has failed to address a summary judgment movant's assertions of fact "an opportunity to properly support or address" the fact. Fed. R. Civ. P. 56(e)(1). The 2010 Advisory Committee Note to Rule 56(e) states that "afford[ing] an opportunity to properly support or address [a] fact" is "in many circumstances . . . the court's preferred first step." Complementary to Rule 56(e)(1), Rule 56(d) establishes a mechanism for nonmovants who lack the facts they need to seek an opportunity to gather more information before responding to a motion for summary judgment. Fed. R Civ. P. 56(d); *see Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (discussing then-Rule 56(f), which is now Rule 56(d)).

At the same time, Rule 56(e) authorizes a less forgiving approach in appropriate circumstances. It allows a court to "consider [a] fact undisputed" if it has not been properly supported or addressed as required by Rule 56(c). Indeed, for the evidentiary burden that Rule 56(c) places on nonmovant plaintiffs to function, a court must be able to evaluate an inadequately supported assertion of material fact and deem it not materially disputed, such that summary judgment is warranted in whole or in part.

In remanding the case the first time, the earlier panel mentioned not only Rule 56(e), but also Federal Rule of Civil Procedure 55 and District of Columbia District Court Local Rule 7(b). Rule 55 by its terms applies to a judgment against "a party against whom a judgment for affirmative relief is sought," Fed. R. Civ. P. 55(a)—*i.e.* a defendant (or a party defending against a counterclaim or cross-claim); it is not applicable to a plaintiff, such as Grimes in this case, in a defensive posture with respect to a motion for summary judgment. Of general relevance, however, is Rule 55's

implicit preference for judgments on the merits, and its cautions against default as a sanction for curable non-response or lack of diligence. *See, e.g.*, Fed. R. Civ. P. 55 Advisory Committee Note to the 2007 Amendments (stating that "[a]cts that show an intent to defend" frequently defeat a default judgment). Grimes clearly has an intent to make her case, not to abandon her claims on their merits. Grimes's response was limited to seeking disqualification and requesting more time to respond otherwise to the summary judgment motion.

District of Columbia District Court Local Rule 7(b), for its part, gives a party two weeks to respond to an opponent's motion, and allows the court to "deem[] conceded" a motion to which no timely response is made. The district court did not explain how Grimes's response to summary judgment could be treated as a "non-response" indicating concession of summary judgment within the meaning of Local Rule 7(b); it merely stated that "Local Civil Rule 7(b) . . . can be construed and applied consistently with Rule 56(e)." *Grimes*, 923 F. Supp. 2d at 198.

In view of these considerations, we leave it to the district court to decide in the first instance how to proceed in light of its ruling on the asserted conflict of interest.

**B.**

Because the district court may revisit the summary judgment question on remand, we briefly reiterate the governing legal standard. Grimes faults the government for merely pointing out in its summary judgment motion that she lacked factual support for her claims, without citing to factual material in the record that supported the government's version of events. Appellant's Br. 26-27; Appellant's Reply 1-8. She contends that, if the court had examined the substance of the government's motion and not simply relied on her lack of

opposition, it would have denied the motion as inadequately supported. Appellant's Br. 23-27. Grimes also sees inconsistency in the district court crediting the government's position, which cited to Grimes's complaint, while it "ignore[d] other paragraphs of the very same complaint that refute" the government's "unsupported assertions." *Id*. at 27; *see id.* at 23-26, Appellant's Reply 1, 5-6. These claims badly distort the requirements of Rule 56.

Grimes fails to appreciate that the burden on a defendant moving for summary judgment may be discharged without factual disproof of the plaintiff's case; the defendant need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to support a reasonable jury to find in her favor on one or more essential elements of her claim. Under the current version of Rule 56(c)(1)(B), "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . showing that . . . an adverse party cannot produce admissible evidence to support the fact." That point is driven home in the Advisory Committee Note, which stresses that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." Fed. R. Civ. P. 56 Advisory Committee Note to the 2010 Amendments.

Grimes relies on *Adickes v. Kress*, 398 U.S. 144, 157 (1970), for the proposition that "it has consistently been held that the moving party bears the burden of demonstrating the absence of any genuine issue of material facts." Appellant's Br. 8; Appellant's Reply 8. But the Supreme Court in *Celotex Corp. v. Catrett Corp.*, 477 U.S. 317 (1986), made clear that any suggestion in *Adickes* that a defendant seeking summary judgment must come forward with evidence was a misreading of Rule 56. *Celotex*, 477 U.S. at 325. A defendant need not

submit "affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323. A movant need only "'show[]'—that is, point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. A defendant moving for summary judgment must still "discharge the burden the rules place upon him: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Id.* at 328 (White, J., concurring); *see Beatty v. Washington Metropolitan Area Transit Authority*, 860 F.2d 1117, 1120-21 (D.C. Cir 1988). The burden that the movant "always bears" is that of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see id.* at 328 (White, J., concurring) (agreeing that a moving defendant need not "always support his motion with evidence or affidavits showing the absence of a genuine dispute about a material fact"); *id.* at 331-32 (Brennan, J., dissenting) (a defendant moving for summary judgment "may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim," and where the record lacks evidence to support essential elements of plaintiff's claim, "the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record.").

The district court's acceptance of the government's reference to Grimes's complaint was not in error. Grimes alleged some facts with which the government agrees, and that thus are not in dispute: Karl Grimes was a resident at Oak Hill when he was injured in a fight with another resident, sustained a head injury, and died five days later. *See*

19

Statement of Material Facts as to Which There Is No Genuine Issue, J.A. 84. The government referred to Grimes's complaint to "point out," in keeping with *Celotex*, the facts surrounding Karl Grimes's death with which it agrees. The government's argument is that those facts do not, without more, constitute a violation of Grimes's rights.

Because Grimes is the plaintiff and so bears the burden of proof of her claims, it is well established that she cannot rely on the allegations of her own complaint in response to a summary judgment motion, but must substantiate them with evidence. *Celotex*, 477 U.S. at 324 (stating that "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"); *Bush v. District of Columbia*, 595 F.3d 384, 386-87 (D.C. Cir. 2010); *see* Fed. R. Civ. P. 11(b)(3).[5] As a plaintiff opposing summary judgment, it was Grimes's burden to identify evidence that a reasonable jury could credit in support of each essential element of her claims. There was thus no inconsistency in the district court's acceptance of the government's reference to the complaint as its way of expressing its agreement to certain basic facts, and the court's simultaneous refusal to credit other allegations in the complaint as evidentiary support for Grimes's opposition to summary judgment.

---

[5] Allegations of facts within a plaintiff's personal knowledge are evidence upon which she may rely in opposing summary judgment. *See* Fed. R. Civ. P. 56(c)(4). If a complaint is verified—which is no longer typical—and it otherwise satisfies the requirements of Rule 56(c)(4), it has the same evidentiary value as a plaintiff's affidavit or sworn declaration. *See, e.g.*, *Neal v. Kelly*, 963 F.2d 453, 457-58 (D.C. Cir. 1992) (collecting cases). The complaint here, however, is not verified. In any event, many of its essential allegations are not facts within Grimes's personal knowledge and thus require other evidentiary support.

In sum, the fundamental questions on summary judgment are (1) whether the movant has borne its "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," and, if so, (2) whether the nonmoving party has borne her burden "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 323-24. As Judge Griffith's separate opinion emphasizes, "a district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." Concurrence at 4. When such independent scrutiny confirms fatal shortfalls in the evidence necessary to support a verdict in a nonmoving plaintiff's favor, the motion may be granted.

## C.

Finally, we pause briefly to note that various twists in this litigation have been less than conducive to orderly and full investigation of Grimes's claims. By granting *nunc pro tunc* an already-expired motion for an extension of time to submit expert reports, the court offered an illusory opportunity. Government counsel agreed to seek a discovery extension that it never sought, instead filing a summary judgment motion that capitalized on Grimes's incomplete discovery as the basis for final judgment against her. The court then decided the pending motions in erroneous sequence, granting summary judgment for want of evidence with a motion to disqualify counsel pending, and then denying the disqualification motion as moot.

Grimes's counsel appears to have shown perilous inattention to or misapprehension of a plaintiffs' burden in litigating a case such as this one.  Counsel for a party that bears the burden of proof on any issue must be particularly diligent in protecting discovery opportunities, and prompt and assertive in requesting needed information.  Grimes, as plaintiff, bears the burden of proof on her claims, and some of the information needed to carry that burden is likely obtainable only through discovery from opposing parties.  Even granting that Grimes's counsel did not alone cause the discovery scheduling confusion in this case, the reality is that, as a practical matter, it is Grimes who stands to suffer from it.  Her counsel must take primary responsibility for requesting discovery, diligently pressing for its production, and assiduously defending discovery prerogatives.  Once a properly supported summary judgment motion is made, it is the plaintiff who bears the burden to gather and present the evidence to the court.  Counsel must carefully attend to his obligations so as to avoid decision of his client's claims based on procedural failings, and to protect the opportunity for a merits-based resolution.

\* \* \*

We vacate the district court's grant of summary judgment and its denial as moot of the motion to disqualify and to enlarge time to respond to the motion for summary judgment, and remand the case for the district court to decide the motion to disqualify before ruling on any dispositive motion.

*So ordered.*

GRIFFITH, *Circuit Judge*, concurring:

I join the majority opinion in full but write separately to raise concerns with how the district court construed the Rules of the United States District Court for the District of Columbia (Local Rules) in granting summary judgment to the District on Grimes's Eighth Amendment claim.

As the majority opinion recounts, Grimes did not file an opposition to the District's motion for summary judgment. Maj. Op. 6-8. Instead, she asked the district court to strike the motion based on an alleged conflict of interest involving the District's former Attorney General. The court refused and granted the District's motion "as conceded" without further explanation. *See* J.A. 189. We reversed, instructing the court to state its rationale for granting summary judgment. *Grimes v. District of Columbia*, 464 F. App'x 3, 4 (D.C. Cir. 2012).

On remand, the district court reached the same result as before and this time supplied an explanation for its decision, as we had directed. The explanation, however, was so brief as to be unclear. After reciting relevant portions of Federal Rule 56(e) and Local Rules 7(b) and 7(h), the court observed that the Local Rules "can be construed and applied consistently with [Federal Rule] 56(e)" and granted summary judgment to the District, explaining that it was relying on "uncontroverted assertions" in the District's motion for summary judgment. *Grimes v. District of Columbia*, 923 F. Supp. 2d 196, 198 (D.D.C. 2013). In light of this explanation, I see only two ways the court could have reached this result. Either would be incorrect.

A

In its brief arguing for summary judgment, the District repeatedly stated that "the record contains no evidence"

supporting any element of Grimes's Eighth Amendment claim. *See* J.A. 77. If the district court treated these assertions as admitted based on Grimes's failure to oppose summary judgment, then it misapplied Federal Rule of Civil Procedure 56(e)(2) and Local Rule 7(h).

A motion for summary judgment typically includes a brief or memorandum arguing why summary judgment is legally appropriate. In support of its motion, the moving party also submits a separate statement of material facts that it claims are not in dispute. *See* D.D.C. R. 7(h).* If the nonmoving party sees things differently, it must identify for the court the facts it claims are in dispute and must be resolved at trial. *Id.* Both the Federal and Local Rules anticipate that the nonmoving party, like Grimes here, might not rebut the moving party's asserted facts. Federal Rule 56(e)(2) provides, "If a party . . . fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion [for summary judgment]." FED. R. CIV. P. 56(e)(2). The Advisory Committee's Notes explain that this rule "reflects the 'deemed admitted' provisions in many local rules." FED. R. CIV. P. 56(e)(2) Advisory Committee's Note (2010). Under the local rule relevant here, the district court may "assume" that the nonmoving party "admitted" any facts that it failed to "controvert" after the moving party requested summary judgment. *See* D.D.C. R. 7(h)(1).

Here, the District identified only three facts in its "Statement of Material Facts as to Which There Is No Genuine Issue": Karl Grimes was committed to Oak Hill; he was injured

---

* The Federal Rules describe only how a party should support factual assertions. *See* FED. R. CIV. P. 56(c). They leave courts free to determine where those assertions should appear. *See* FED. R. CIV. P. 56(c)(1) Advisory Committee's Note (2010).

in a fight with another resident there; and he died after suffering a head injury in that fight. J.A. 84. Because Grimes never opposed summary judgment and therefore did not controvert these assertions, Local Rule 7(h) allowed the district court to assume that she admitted these facts, but no others. But the District's repeated assertion in its brief that no record evidence supported Grimes's claim could not be conceded simply because Grimes never argued otherwise. In the first place, this assertion is not a statement of fact but a legal conclusion that required the court to apply law (the elements of Grimes's Eighth Amendment claim) to fact (any undisputed facts plus anything in the record). The "deemed admitted" rules, however, apply only to *facts*. *See* FED. R. CIV. P. 56(e); D.D.C. R. 7(h). Moreover, the "deemed admitted" rules apply only to a party's statement of material facts, but the District's assertion appeared only in its brief. The district court erred if it granted summary judgment because it "deemed admitted" the District's assertions that the record did not support Grimes's Eighth Amendment claim.

B

Alternatively, the district court may have concluded that the failure of Grimes to oppose the District's motion for summary judgment was a concession of the motion's merit. This, too, would be error because motions for summary judgment may not be conceded for want of opposition. Federal Rule 56 permits a district court to grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). The burden is always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden. *Contra Grimes*, 923 F. Supp. 2d at 198 (granting summary judgment because "the *non*movant fail[ed] to demonstrate a genuine dispute as to any

4

material fact" (emphasis added)). For that reason, a district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment. *See* FED. R. CIV. P. 56(e)(3) ("If a party . . . fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.").

In announcing its decision to grant summary judgment to the District, the district court cited Local Rule 7(b). *See Grimes*, 923 F. Supp. 2d at 198. That rule requires a party opposing any motion to file "a memorandum of points and authorities in opposition to the motion" within fourteen days. *See* D.D.C. R. 7(b). The rule further provides that "the [c]ourt may treat the motion as conceded" if the opposing party fails to file its motion in opposition within that time. *Id.*

On its face Local Rule 7(b) appears to allow a district court to treat an unopposed motion for summary judgment as conceded, but that cannot be the case because of the demands of Federal Rule 56. And local rules, by law, cannot conflict with federal rules. *See* FED. R. CIV. P. 83. For this reason, every circuit to have considered the question has concluded that failure to oppose a motion for summary judgment is no concession, regardless of what local rules might provide. *See, e.g.*, *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993); *Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990); *Jaroma v. Massey*, 873 F.2d 17, 19-20 (1st Cir. 1989); *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

The Local Rules can still be read harmoniously with Federal Rule 56. As already noted, Local Rule 7(h) allows only certain uncontroverted *facts* to be "admitted," consistent with the demands of Federal Rule 56. And by their titles, Local Rule 7(h) ("Motions for Summary Judgment") applies specifically to motions for summary judgment, while Local Rule 7(b) ("Opposing Points and Authorities") applies to motions in general. In my view, the best way to read these rules is to apply Rule 7(h) and not Rule 7(b) when a nonmoving party fails to oppose a motion for summary judgment. *Cf. Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) (holding that a more general statute "does not apply" because "[a] specific provision controls over one of more general application").

To be clear, the District did all that the rules require. It submitted a statement of undisputed material facts and a brief explaining why summary judgment was appropriate. As our majority opinion explains, *Celotex* does not require a defendant moving for summary judgment to do anything more than point out to the court that the record cannot support the plaintiff's claim. *See* Maj. Op. 17-20 (citing *Celotex Corp. v. Catrett Corp.*, 477 U.S. 317 (1986)). But even if the nonmoving party does not oppose summary judgment, the district court may not treat the motion as conceded. Instead, the court must examine the record on its own and determine that the moving party's assertions warrant summary judgment. The district court took those very steps for Grimes's claim of negligent hiring, training, and supervision. *See Grimes*, 923 F. Supp. 2d at 199 (granting summary judgment "based on the uncontroverted assertions in defendant's [motion for summary judgment] *and plaintiff's failure to designate an expert witness*," and explaining why an expert witness was necessary to Grimes's claim (emphasis added)). But when it came to her Eighth Amendment claim, the court seems to have treated the matter as conceded simply because she failed to oppose the

motion. *See id.* at 198-99 (noting that the District "asserts" that Grimes could not cite any record evidence supporting any element of her claim and then holding that "the [c]ourt considers defendant's assertions to be undisputed for purposes of the motion"); *see also id.* at 198 ("[Rule 56] and the accompanying Advisory Committee Notes do not prohibit this Court from granting summary judgment where, as here, the nonmovant fails to demonstrate a genuine dispute as to any material fact."). The Federal Rules do not permit this.

Admittedly, one cannot fault the district court's course here. We have endorsed such an approach. *See FDIC v. Bender*, 127 F.3d 58, 68 (D.C. Cir. 1997) ("[I]t was not an abuse of discretion for the district court, pursuant to [the predecessor to Local Rule 7(b)], to treat the [movant's] motion for summary judgment as conceded."); *see also Skrzypek v. FBI*, No. 10-5430, 2011 WL 2618182 (D.C. Cir. June 21, 2011); *Giraldo v. U.S. Dep't of Justice*, No. 02-5058, 2002 WL 1461787 (D.C. Cir. July 8, 2002). Following our lead, district judges in this circuit have frequently treated unopposed motions for summary judgment as conceded. *See, e.g.*, *Smith v. U.S. Dep't of Justice*, 987 F. Supp. 2d 43, 46-47 (D.D.C. 2013) (citing *Grimes v. District of Columbia*, 923 F. Supp. 2d 196 (D.D.C. 2013)); *Burke v. Inter-Con Sec. Sys., Inc.*, 926 F. Supp. 2d 352, 356 (D.D.C. 2013); *Cromartie v. District of Columbia*, 729 F. Supp. 2d 281, 285 (D.D.C. 2010); *Indus. Bank of Washington v. Techmatics Techs., Inc.*, 763 F. Supp. 629, 636 (D.D.C. 1991).

In an appropriate future case, we may find it necessary to reconsider *Bender* and the way Local Rule 7(b) has been applied to motions for summary judgment. In the meantime, I note that the rule is discretionary. Thus, even if we have said that a court *may* treat an unopposed motion for summary judgment as conceded, it need not do so. The wiser course for

district courts is to conduct an independent review of the record to determine whether there remains any genuine dispute over material facts. If not, the court should say as much without relying upon any concession by the nonmoving party.