**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0267n.06

No. 14-6196

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 16, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BARBARA JEAN BOWERS, M.D., | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| THE OPHTHALMOLOGY GROUP LLP, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellee.** | ) | |
| | ) | |

Before: MOORE and GRIFFIN, Circuit Judges; SARGUS, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Barbara Jean Bowers, M.D., appeals from the district court's grant of summary judgment in favor of Defendant-Appellee The Ophthalmology Group LLP ("the Group"). Bowers, an ophthalmologist, was a partner in the Group until the partnership expelled her in 2010. Bowers subsequently sued the Group under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Kentucky state law, seeking relief for gender discrimination and retaliation. In 2012, the district court granted summary judgment in favor of the Group, finding that, because Bowers was a "partner" and not an "employee," she could not bring a claim under Title VII. We vacated and remanded this decision because the Group's counsel previously represented Bowers in a "substantially related" matter, and thus should have been disqualified. On remand, and represented by new counsel, the Group again moved for summary judgment and the district court once more ruled in its favor.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

Bowers now argues that the district court erred in holding that she was a "partner" for purposes of Title VII and that the district court abused its discretion in not providing her with an opportunity to conduct discovery. For the reasons discussed below, we **AFFIRM** the district court's grant of summary judgment.

## I. BACKGROUND

### A. Bowers's Termination From the Group

Bowers joined the Group as an employee in 1999. R. 7-10 (Bowers Dep. at 18) (Page ID #135). In 2002, Bowers bought into the partnership, signed a partnership agreement, and became one of six partners. *Id.* at 10, 18 (Page ID #127, 135). Bowers was the only female partner.

On November 9, 2009, Bowers tendered a letter of resignation to the Group. *Id.* at 95 (Page ID #212); R. 7-6 (11/9/09 Letter) (Page ID #109–11). Bowers's letter gave "official notice that [she would] be leaving The Ophthalmology Group" and would provide further details through her attorney. R. 7-6 (11/9/09 Letter at 2–3) (Page ID #110–11). The Group's partnership agreement required a one-year notice prior to departure, and Bowers continued working in the Group after sending her letter. R. 7-2 (Partnership Agreement at 13–14) (Page ID #94–95); R. 17-1 (Bowers Aff. at 2) (Page ID #1003).

Bowers filed for bankruptcy on February 25, 2010, prompted by a failed investment unrelated to her ophthalmology practice. R. 7-10 (Bowers Dep. at 15–17) (Page ID #132–34). On March 4, 2010, the partnership met without Bowers and voted to expel her from the Group. R. 7-12 (Woodford Dep. at 13) (Page ID #380). Bowers received an expulsion letter the next

day, stating that "all of the remaining Partners agree that due to your Chapter 7 bankruptcy and the creditors' proceedings associated with such bankruptcy and other personal conduct on your part which the Partnership . . . finds detrimental . . . , your Partnership is to be terminated." R. 7-8 (Expulsion Letter at 1) (Page ID #114).

## B.  Bankruptcy and State Court Proceedings

Bowers filed suit against the Group in the United States Bankruptcy Court for the Western District of Kentucky, alleging that the Group impermissibly fired her because she declared bankruptcy, in violation of 11 U.S.C. § 525. R. 17-13 (Bankruptcy Ct. Order Clarification) (Page ID #1336). The bankruptcy court dismissed her claim with prejudice because Bowers agreed to dismiss the case. *Id.*

Upon learning that Bowers intended to file a sex-discrimination claim against the Group in Kentucky state court, *see* R. 7-18 (Mot. for Relief from Stay) (Page ID #865), the Group filed a petition in McCracken Circuit Court seeking a declaratory judgment that Bowers was a "partner" of the Group and thus not entitled to the protections of the Kentucky Civil Rights Act. R. 7-18 (State Court Compl. at 6) (Page ID #859). The Group also brought state-law claims against Bowers for breach of fiduciary duty and wrongful use of civil proceedings. *Id.* at 6–8 (Page ID #859–61). Bowers counterclaimed, alleging breach of fiduciary duty, abuse of process, injurious falsehood, and intentional infliction of emotional distress. R. 7-19 (Answer and Countercl. at 16–18) (Page ID #891–93). Bowers also filed Title VII and state-law discrimination claims with the Kentucky Commission on Human Rights ("KCHR") and the

Equal Employment Opportunity Commission ("EEOC"). R. 7-20 (Charge of Discrimination at 1) (Page ID #895). Both the KCHR and the EEOC dismissed Bowers's claims, finding that she was not an "employee" of the Group and thus not entitled to relief. R. 7-21 (KCHR Dismissal at 1) (Page ID #899); R. 7-23 (EEOC Dismissal at 1) (Page ID #907).

## C. First Proceedings in the District Court

On March 5, 2012, Bowers filed a complaint in the United States District Court for the Western District of Kentucky.[1] Bowers's complaint alleged (1) gender discrimination under Title VII; (2) wrongful termination in breach of contract and/or in violation of public policy under Kentucky common law; (3) gender discrimination under the Kentucky Civil Rights Act; (4) retaliation for complaining about gender discrimination under Title VII; (5) retaliation for complaining about gender discrimination under the Kentucky Civil Rights Act; and (6) misappropriation of name by defendant for commercial advantage under Kentucky common law. R. 1 (Compl. at 22–31) (Page ID #22–29); R. 14 (First Am. Compl. at 24–30) (Page ID #945–51).

On March 30, 2012, the Group filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and lack of subject-matter jurisdiction. R. 6 (Mot. to Dismiss at 1) (Page ID #42). The Group included an appendix with its motion, attaching exhibits and deposition transcripts from the bankruptcy litigation and

---

[1]Bowers argues in her brief that the district court incorrectly stated that she filed her claim on April 23, 2012. *See* Appellant Br. at 27–29. We note for clarification that Bowers filed her original complaint in the district court on March 5, 2012, and she filed her first amended complaint on April 23, 2012. R. 1 (Compl. at 1) (Page ID #1); R. 14 (First Am. Compl. at 1) (Page ID #922); *see also* Fed. R. Civ. P. 15(c)(1)(B).

pleadings from the state court and administrative actions.  R. 7 (Mot. to Dismiss App. at 1–3) (Page ID #78–80).

Bowers responded on May 3, 2012.  R. 17 (Resp. to Mot. to Dismiss at 1) (Page ID #961).  Bowers's response requested additional time for discovery, arguing that some members of the Group were not deposed in the bankruptcy proceeding.  Bowers attached an affidavit from her attorney, pursuant to Rule 56(d), stating that "discovery in th[e] prior proceedings was insufficient to allow the Plaintiff the full discovery and opportunity she needs to offer full and complete opposition to the allegations made by the Defendant."  R. 17-2 (5/3/12 Rule 56(d) Aff. at 1) (Page ID #1004).  Bowers also attached deposition exhibits from the bankruptcy proceedings to her response, in addition to affidavits from individuals who tried to schedule an appointment with Bowers but were told that she did not have availability.  *See*, *e.g.*, R. 17-3 (Buchanan Aff. at 1) (Page ID #1006).

On May 16, 2012, Bowers filed a motion to disqualify the Group's counsel, an attorney at McMurray & Livingston PLLC ("M&L").  R. 24 (Pl. Mot. to Disqualify) (Page ID #1349–55).  Bowers contended that M&L had represented her in two prior matters that were "substantially related" to her current lawsuit.  The Group argued in response that there was no conflict of interest.  R. 29 (Def. Resp. to Pl. Mot. to Disqualify) (Page ID #1752–1864).

The district court converted the Group's motion to dismiss into a Rule 56 motion for summary judgment and granted summary judgment in favor of the Group on August 22, 2012.  R. 41 (8/22/12 D. Ct. Op. at 2) (Page ID #1968).  According to the district court, "as a matter of

law, Bowers was a partner in Ophthalmology Group," and could not bring claims under Title VII. *Id.* at 10 (Page ID #1976). The district court declined to exercise supplemental jurisdiction over Bowers's state-law claims. *Id.* at 10–11 (Page ID #1976–77). Finally, because it had granted summary judgment in favor of the Group and dismissed Bowers's state-law claims, the district court denied "as moot" Bowers's motion to disqualify M&L. *Id.* at 11 (Page ID #1977).

**D. Sixth Circuit Opinion and Proceedings on Remand**

Bowers appealed the district court's order and filed a motion to disqualify M&L on appeal. On October 25, 2013, we granted Bowers's motion to disqualify, holding that M&L's prior representation of Bowers in her attempt to establish an ophthalmological practice in Louisville was "substantially related" to the current litigation. *Bowers v. Ophthalmology Group*, 733 F.3d 647, 651 (6th Cir. 2013). We also held that the district court erred in failing to decide Bowers's disqualification motion prior to ruling on the Group's motion for summary judgment. *Id.* We explained that, because "a potentially conflicted counsel's confidential information could infect the evidence presented to the district court," a district court must decide a disqualification motion first. *Id.* at 654–55. We vacated and remanded to the district court, instructing the district court "to disqualify M&L on remand." *Id.* at 655.

On remand, the Group substituted new counsel and M&L was "discharged as counsel of record." R. 50 (Order Substituting Counsel) (Page ID #2009). The magistrate judge entered a discovery schedule, ordering that written discovery take place prior to July 7, 2014 and that depositions occur "no later than January 7, 2015"; the order set a January 27, 2015 deadline for

dispositive motions. R. 57 (Scheduling Order at 3–4) (Page ID #2037–38). Bowers then filed a second amended complaint on February 14, 2014, again alleging gender discrimination and retaliation under Title VII, as well as state-law claims. R. 60 (Second Am. Compl. at 23–31) (Page ID #2102–10). On March 6, 2014, the Group answered Bowers's complaint and counterclaimed for breach of fiduciary duty and unjust enrichment. R. 61 (Answer at 21–22) (Page ID #2135–36). That same day, and approximately ten months prior to the scheduled deadline for dispositive motions, the Group moved for summary judgment, again relying on the previous bankruptcy depositions and other documents attached to its original motion to dismiss. R. 62 (Mot. for Summ. J.) (Page ID #2138). The magistrate judge granted Bowers a thirty-day extension to respond, in addition to extending the original discovery deadline by thirty days. R. 69 (Order Extending Deadlines) (Page ID #2275).

Bowers responded to the Group's motion for summary judgment on April 21, 2014. R. 72 (Pl. Resp. to Mot. for Summ. J.) (Page ID #2296). Bowers again argued that additional time was needed for discovery, and her attorney submitted a declaration pursuant to Rule 56(d). R. 72-2 (4/21/14 Rule 56(d) Decl.) (Page ID #2338). Bowers and the Group continued to serve and respond to written discovery requests. *See, e.g.*, R. 86 (Notice of Filing of Def. Interrog. and Admis.) (Page ID #2457); R. 90 (Notice of Answers to First Set of Interrog.) (Page ID #2463); R. 104 (Notice of Service of Supp. Produc.) (Page ID #2524). The parties also noticed and scheduled depositions to occur in September and October 2014. *See, e.g.*, R. 101 (Group Dep. Notice at 1–2) (Page ID #2511–12); R. 110-6 (Bowers Dep. Notice at 1) (Page ID #2607).

On August 27, 2014, prior to these depositions, the district court granted summary judgment in favor of the Group. R. 107 (8/27/14 D.Ct. Op. at 1) (Page ID #2529). The district court held that, "based on the reasons set forth in this Court's prior Memorandum Opinion and Order, the Court finds that as a matter of law, Dr. Bowers was a partner, and not an 'employee' under Title VII." *Id.* at 3 (Page ID #2531) (internal citation omitted). The district court was not persuaded by Bowers's argument that further discovery was needed, finding that Bowers "had ample opportunity for discovery on employment status issues" in her prior litigation, and that evidence relating to her employment status "is not exclusively within Ophthalmology Group's control." *Id.* at 4 (Page ID #2532). Lastly, the district court declined to exercise supplemental jurisdiction over Bowers's state-law claims against the Group. *Id.* at 5 (Page ID #2533).

Bowers filed a Rule 59(e) motion to alter the judgment, attaching the Group's written discovery responses and again arguing that the district court erred in entering summary judgment prior to the close of discovery. R. 110-1 (Rule 59(e) Mot.) (Page ID #2552). The district court denied Bowers's motion on November 7, 2014, R. 118 (11/7/14 Order at 1) (Page ID #2691), and Bowers timely appealed. *See* R. 112 (Notice of Appeal at 1) (Page ID #2628); R. 119 (Am. Notice of Appeal at 1) (Page ID #2692).

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Barrett v. Whirlpool Corp.,* 556 F.3d 502, 511 (6th Cir. 2009). Summary judgment is appropriate "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must draw "all justifiable inferences" in Bowers's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. We review the district court's denial of Bowers's Rule 56(d) motion for an abuse of discretion. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 419 (6th Cir. 2008).

## B. Title VII

Bowers first argues that the district court erred in finding that she was a "partner" for purposes of Title VII. Title VII prohibits an employer from firing an individual on the basis of sex. 42 U.S.C. § 2000e-2(a). "As a general rule," Title VII and other "federal employment discrimination statutes protect employees." *Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir. 2004). Accordingly, the statute does not extend to "partners." *See Simpson v. Ernst & Young*, 100 F.3d 436, 441 (6th Cir. 1996). Whether an individual is an "employee" for purposes of Title VII is a preliminary matter that, "[i]n the absence of a conflict of material fact," can be decided by the court as a matter of law. *Id.* at 439; *see also Weary v. Cochran*, 377 F.3d 522, 524 (6th Cir. 2004).

Title VII defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Because this definition is "completely circular and explains nothing," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992), we apply a common-law agency test to

determine whether an individual is an "employee" under the statute. *Simpson*, 100 F.3d at 443; *see also Shah*, 355 F.3d at 499. In *Simpson v. Ernst & Young*, 100 F.3d at 443, we looked to "common-law principles as codified in the [Uniform Partnership Act]" and utilized the following non-exclusive factors to determine whether Simpson was a "partner" or an "employee":

> the right and duty to participate in management; the right and duty to act as an agent of other partners; exposure to liability; the fiduciary relationship among partners; use of the term "co-owners" to indicate each partner's "power of ultimate control;" participation in profits and losses; investment in the firm; partial ownership of firm assets; voting rights; the aggrieved individual's ability to control and operate the business; the extent to which the aggrieved individual's compensation was calculated as a percentage of the firm's profits; the extent of that individual's employment security; and other similar indicia of ownership.

*Id.* at 443–44.

Both Bowers and the Group analyze Bowers's employment status under the non-exclusive factors utilized by the Supreme Court in *Clackamas Gastroenterology Associates v. Wells*, 538 U.S. 440 (2003). *See* Appellant Br. at 40; Appellee Br. at 7. In determining "whether a shareholder-director [was] an employee" for purposes of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, the Court in *Clackamas* utilized six factors from the EEOC Compliance Manual that "focus[ed] on the common-law touchstone of control." These non-exhaustive factors include:

> Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work[;]

> Whether and, if so, to what extent the organization supervises the individual's work[;]

> Whether the individual reports to someone higher in the organization[;]

> Whether and, if so, to what extent the individual is able to influence the organization[;]
>
> Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts[;]
>
> Whether the individual shares in the profits, losses, and liabilities of the organization[;]

*Clackamas*, 538 U.S. at 449–50 (internal quotation marks omitted). These factors overlap with the common-law agency test used in *Simpson*, 100 F.3d at 443–44.

Bowers contends that, although she desired to be a partner of the Group and held several *formal* indicia of partnership, in reality she was only a "nominal" partner under the *Clackamas* factors because she "had no real control within nor influence on" the Group or her own practice. Appellant Br. at 42–43. For example, Bowers contends that she had no control over her own schedule, as evidenced by affidavits from individuals who desired to schedule an appointment with her but were told that she did not have availability. *Id.* at 43. She also contends that the partners fired her without her input, just as they would fire an employee, and that she had no control over hiring or firing decisions within the Group as a whole. *Id.* at 41.

A review of the record demonstrates, however, that Bowers was a partner of the Group under the factors used in *Simpson* and *Clackamas*. Bowers bought into the partnership in 2002, R. 7-10 (Bowers Dep. at 18) (Page ID #135), and the partnership bought out her interest when she was expelled. R. 62-5 (Order Approving Sale) (Page ID #2193). Bowers signed a partnership agreement. *Id.* at 10 (Page ID #127). She also signed the Group's statement of registration with the Kentucky Secretary of State. *Id.* at 82 (Page ID #199). The remaining

partners of the Group unanimously voted to expel her and issued a notice pursuant to the process described in the partnership agreement for expelling partners. R. 7-2 (Partnership Agreement at 12) (Page ID #93); R. 7-8 (Expulsion Letter at 1) (Page ID #114). Bowers shared in the Group's profits, R. 7-10 (Bowers Dep. at 77, 81) (Page ID #194, 198), and received additional compensation based on her own production. *Id.* at 81 (Page ID #198). For tax purposes, Bowers received a K-1 instead of a W-2. *Id.* Bowers received payments when two physicians bought into the partnership, *id.* at 78 (Page ID #195), and she also voted to allow one of the new partners to spread his buy-in payment over three months. *Id.* at 79 (Page ID #196). Bowers attended partnership meetings and partnership meetings were held upon her request. *Id.* at 70–72 (Page ID #187–89). She participated in equipment purchases. *Id.* at 80 (Page ID #197). She also "participate[d] in decisions to alter the formula by which profits were divided." *Id.* at 77, 99–100 (Page ID #194, 216–17). Bowers requested and received the Group's confidential financial information. *Id.* at 96 (Page ID #213). She requested that "certain patients not be scheduled with" her, in addition to other scheduling demands. *Id.* at 93–94 (Page ID #210–11); *see also* R. 62-4 (Scheduling Memo at 1) (Page ID #2178). She requested and received her own "pod" of specific employees with whom to work. R. 7-10 (Bowers Dep. at 92) (Page ID #209). Bowers stated that her scheduling issues "started to become resolved when we hired Kelly Harris, at my suggestion, to be in control of my schedule," further demonstrating her ability to make employment decisions within the group. *Id.* at 41 (Page ID #158). And although Bowers contends that the Group stated that she "had no authority to hire or fire," Appellant Br. at 41, the

Group indicated only that Bowers, in addition to all of the other partners, had no *unilateral* authority to hire or fire. R. 110-4 (Def. Resp. to Interrog. at 7–8) (Page ID #2591–92); *see also* R. 26-10 (Gillespie Dep. at 8, 51–52) (Page ID #1504, 1547–48).

These facts distinguish this case from *Simpson*, in which we found that Simpson was only a "nominal" partner of Ernst & Young and was an "employee" for purposes of Title VII. *Simpson*, 100 F.3d at 441. Although Simpson was titled a partner, "the firm's business, assets, and affairs were directed exclusively by a 10 to 14 member Management Committee and its chairman." *Id*. Because he was not a member of this Committee, "Simpson had no authority to direct or participate in the admission or discharge of partners or other firm personnel," to "participate in determining partners or other personnel compensation . . . including his own," to "participate in the firm's profits and losses," or to "examine the books and records of the firm," unless permitted by the Committee. *Id*. In sum, "Simpson and his similarly situated colleagues were relegated to the position of an employee subject to the virtually absolute, unilateral control of the Management Committee." *Id*. Bowers has not produced facts that demonstrate that her position in the Group was similar to Simpson's. To the contrary, the record indicates that Bowers exercised a role in each of the areas of ownership and control that Ernst & Young denied to the nominal partners in *Simpson*.

Whether the district court appropriately entered summary judgment, however, is intertwined with Bowers's further argument that the district judge abused its discretion in declining her request under Federal Rule of Civil Procedure 56(d) for additional discovery.

Under Rule 56(d) of the Federal Rules of Civil Procedure, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  We consider several factors in determining whether a district court abused its discretion in entering summary judgment prematurely.  These factors include "(1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests."  *CenTra*, 538 F.3d at 420 (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995)).  "Typically, when the parties have no opportunity for discovery, denying the [Rule 56(d)] motion and ruling on a summary judgment motion is likely to be an abuse of discretion."  *Id.*  Even if there has been no discovery, however, summary judgment may nonetheless be appropriate where "the court deems as too vague the affidavits submitted in support of the motion" or "if further discovery would not have changed the legal and factual deficiencies."  *Id.* (internal quotation marks omitted).

Bowers contends that the district court abused its discretion in not permitting her to depose the Group and the remaining partners.  Appellant Br. at 49.  According to Bowers, it was error to grant summary judgment prior to the close of the deadlines agreed to in the magistrate judge's scheduling order.  *Id.*  After considering the record and the factors described above,

however, we disagree. Although depositions had yet to occur in the district court, both parties included in the record the depositions that occurred in the prior bankruptcy litigation. There, Bowers deposed all but two of the Group's remaining partners, in addition to the Group's office administrator, Joy Woodford. *See* R. 7 (Mot. to Dismiss App. at 1–2) (Page ID #78–79); R. 17-10 (Gillepsie Dep.) (Page ID #1087); R. 7-12 (Woodford Dep. at 6–7) (Page ID #373–74). From Bowers's own deposition testimony and the partnership documents in the record, the district court concluded that she was a partner as a matter of law because she "engaged in decision-making with her partners" and shared in the formal and functional indicia of partnership. R. 107 (8/27/14 D. Ct. Op. at 5) (Page ID #2533). Although Bowers seeks additional discovery, as the district court recognized, evidence that Bowers was functionally an "employee" as opposed to a "partner" "is not exclusively within Ophthalmology Group's control," and Bowers had an opportunity to discover this evidence in the prior litigation and in the months that discovery remained open in the district court. *Id.* at 4–5 (Page ID #2532–33).

Further, we are not persuaded by Bowers's argument that the prior representation by M&L necessitates further discovery here. Bowers stated in her initial disclosures under Rule 26(a) that she might make use of the bankruptcy depositions, including her own. R. 75-1 (Bowers Rule 26(a) Discl. at 6) (Page ID #2371). When the Group asked Bowers to produce this material in a discovery request, Bowers objected only on the ground that the material was "in the public domain and [] freely available to the Defendant." R. 110-2 (Bowers Interrog. Resp. at 5) (Page ID #2574). Bowers has not moved to suppress any documents, nor has she otherwise

specified how M&L's prior representation affected the material relied upon by the Group in its motion for summary judgment. Under these circumstances, we cannot say that the district court abused its discretion in not granting further discovery. And, as discussed above, because the record clearly disclosed that Bowers was a "partner" in the Group as a matter of law, the district court did not err in granting summary judgment.[2]

## C. Supplemental Jurisdiction

Finally, Bowers argues that the district court erred in declining to exercise supplemental jurisdiction over Bowers's state-law claims. *See* Appellant Br. at 67. We review a district court's decision declining to exercise supplemental jurisdiction over state claims for an abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). The district court did not abuse its discretion here. According to Bowers, litigating her state claims in federal court is needed to preserve judicial resources. Appellant Br. at 68. But "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). Here, as the district court recognized in declining to exercise supplemental jurisdiction, Bowers's state case remained pending in McCracken Circuit Court and her federal case was "still in its infancy." R. 107 (8/27/14 D. Ct.

---

[2]Bowers also contends that the district court "declined to disqualify M&L as ordered by this Court," choosing instead to *substitute* counsel without her input. Appellant Br. at 31. Bowers did not raise this issue with the district court, however, either in her response in opposition to summary judgment or in her Rule 59(e) motion to vacate. And as a result of the substitution order, attorneys at M&L are no longer counsel of record in this case. R. 50 (Order Substituting Counsel) (Page ID #2009). Accordingly, we discern no error that mandates reversal of the district court's grant of summary judgment.

Op. at 5) (Page ID #2533).  In these circumstances, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Bowers's Kentucky claims.  *See Gamel*, 625 F.3d at 952.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.